## UPCHURCH v. NORSWORTHY, Adm'r.

1. If one sells the goods of an estate before administration granted, and receives the money therefor, an after appointed administrator, may sue him in trover for the conversion, or waive the *tort*, and bring assumpsit for money had and received.
2. If one, without authority, sells the goods of an estate, and receives the money therefor, it is no defence to an action for its recovery, instituted against him by the administrator, that the sale was void, and vested no title in the purchaser.
3. Where an agent receives money for his principal, to which a third person is entitled, and pays it over to the former, before demand, or notice, from the latter, such payment discharges the agent from all liability.

Error to the Circuit Court of Pickens. Before the Hon. Samuel Chapman.

THE defendant in error, as administrator of Thomas Woolfolk, declared against the plaintiff, in assumpsit. In the progress of the trial, a bill of exceptions was sealed by the presiding judge, which presents the following facts: The deceased, Thomas Woolfolk, died in 1840, possessed of a plantation, and sundry slaves. Before his death, he made and executed a will, in the following language: "I give my wife, every thing I possess, during her widowhood. If she marries, she is to have a third. Not to give security, when she qualifies, unless she marries, then to give security." This will, which was not executed in a manner to pass real estate, was probated in the orphans' court of Pickens, which was the county of the residence of the deceased at the time of his death; but no letters of administration, or testamentary, were granted to any one, until 1844, when letters of administration, with the will annexed, were granted to the defendant in error.

After the probate of the will, the widow proceeded to act as executrix, but never obtained any letters testamentary, and the plaintiff in error was employed by her, to act as her agent, in managing the affairs of the estate. The plaintiff, in the court below, proved, that the plaintiff in error sold

two slaves, belonging to the estate, at public auction, for $1,700. This sale was made in 1841, and notes for the purchase money were taken by him, payable to the widow, as executrix. It also appeared, that the widow shipped the crop of cotton, raised in 1840, in her own name, and in February, 1841, the plaintiff in error received the proceeds from the commission merchant, as her agent, amounting to about $725. There was evidence, tending to show, that the plaintiff delivered the money, on his return, to the widow, but there was other evidence, rebutting it. There was also testimony, tending to show, that the plaintiff had collected all the notes, given for the slaves sold, except about $105, which was still due on one of the notes, which note the plaintiff in error handed over to the defendant, together with about $290, after his appointment as administrator.

It appeared, that the plaintiff in error had paid about $1,600 of debts, against the estate, and which were owing, before the death of the testator. On this evidence, the court charged the jury, that if the defendant received the proceeds of the crop of cotton of the year 1840, he might be charged with it in this action.

The defendant requested the court to charge the jury, that if they believed, that the widow shipped the crop of cotton of 1840, in her own name, and that the defendant received the proceeds of the sale, from the commission merchant, as her agent, and, on his return from Mobile, delivered the same to the widow, then the defendant could not be charged with this sum. This charge the court refused, and instructed the jury, that if the defendant had been the mere bearer of the money, to the widow, and had delivered it to her, he could not be charged with it; yet if he received the money, knowing all the circumstances, from the commission merchant, he was liable for it, although he might have paid it to her.

The court also charged the jury, that the money the defendant received for the two slaves, he was liable for, unless he had paid it out in discharge of the debts of the testator. The defendant requested the court to charge the jury, that the sale of the slaves was void, and neither the notes given for them, nor the money received on them, were assets of the estate, and that the plaintiff could not recover of the defend-

ant, either the notes, or the amount received upon them. This charge the court also refused; to give, and charged, that the plaintiff could bring his suit, either for the slaves, or their value, or for the money, and could recover it.

The charges given, and the refusal to charge as requested, are assigned as error.

E. W. PECK and N. SMITH, for plaintiff in error.

1. The charge of the court as to the proceeds of the crop of cotton shipped by the widow of testator, is wrong in this: 1. The plaintiff in error was a mere bailee; he received the money for the widow, and was bound to deliver it to her. 2. The charge was calculated to mislead the jury, by saying, if he received the money, knowing the circumstances, he was liable,—I ask, what circumstances?

2. As to the charges respecting the sale of the two negroes, &c., and the notes taken for them, &c., I refer the court to the Digest, p. 223, § 13; Wier v. Davis and Humphries, 4 Ala. 443; Kelly's adm'r v. Kelly's distributees, 9 Ala. 908, 912; Fambro v. Gantt, 12 Ala. 298.

DARGAN, J.—At the time the plaintiff in error sold the slaves, neither letters of administration nor testamentary, had been granted of the goods of Thomas Woolfolk, deceased, and no authority whatever, to sell, had been obtained from the orphans' court. Such a sale, beyond doubt, is void, and gives the purchasers no title whatever. See 4 Ala. 442; 9 ib. 908; 12 ib. 298.

Yet, it does not follow, that the plaintiff in error can plead his want of authority to sell the slaves, in bar of this action to recover of him the money he has received upon such sale; or that he can insist, that his purchaser has no title, in order to defeat an action, brought against him for a conversion of the goods of the deceased; for the title of an administrator in chief, relates back to the death of the decedent, and he may, after obtaining letters, bring *trover* against those who have converted the goods of the estate, in the *interim*, between the death of the deceased, and the grant of letters. 1 Williams Ex'rs. 396, 397; 8 East, 418; 12 Mass. 309; 23 Pick. 128. Our statute, regulating the sale of the personal estate of

deceased persons, does not take away from an administrator, any of the common law remedies, given him, for injuries done the estate; consequently although the title to the slaves be not vested in the purchasers, by their purchase from the plaintiff in error and as against the defendant in error the sale be absolutely void, yet the defendant cannot by insisting on his want of authority to sell, or that the sale conveyed no title, relieve himself from responsibility. If this were so—if the purchaser was unknown, or the property had been removed beyond the reach of the administratar, he might be without remedy.

Without regard, therefore, to the character of the title, acquired by the purchaser, or whether the sale *was void or not*, as the plaintiff in error assumed the authority to sell the slaves, it was a conversion of them, and he was liable, in an action of trover, for the value of the slaves thus converted; and the question arises, if he is liable for the conversion, may not the administrator waive the *tort*, and bring assumpsit, for the money actually received by the plaintiff in error, by means of the sale.

We think it is well settled, that if the goods of one have been taken from him tortiously, and the wrong doer has sold them, and received the money, the owner may waive the *tort*, and bring assumpsit for the money. Willett v. Willett, 3 Watts, 227; 10 ib. 431; 5 Hill, 577; 12 Pick. 120; 2 Gill. & John. 326; 3 Dana, 552.

These authorities all show, that after a sale, and receipt of the money, by the wrong doer, the owner has his election, either to bring trover for the conversion, or assumpsit for the money received.

But it is contended, that this rule will not apply, in this state, to an administrator, because he has not the authority, under our statute, to confirm the sale made by the wrong doer. We think it useless to enquire, what effect, the recovery against the *wrong doer*, either in trover or assumpsit, would have on the title of the purchaser; for, we have seen, that the plaintiff in error, cannot protect himself from his wrongful acts, even if his purchaser acquired no title, and we can see no reason, why an administrator may not as well waive a *tort*, and sue for the money received, as any other

owner of goods.   We therefore, come to the conclusion, that the court did not err in the charge given, in reference to the money received by the plaintiff in error, on the sale of the two slaves.

But we think the court erred in the charge given, in reference to the proceeds of the crop, of 1840.   It was shipped by the widow of the deceased, in her own name, was sold on her account, and the proceeds handed to the plaintiff in error, to be delivered to her; and there is testimony, tending to show, that he delivered the money to his principal, on his return home.

The rule of law, is, that where an agent receives money for his principal, to which the principal is not entitled, as against a third person, if the agent pays the money over to his principal, before any demand is made or notice given him, not to pay the money to the principal, such payment by the agent will discharge him from all liability.   Thompson v. Stickney, 6 Ala. 579; 7 John. 179; 7 Cowen, 456.

At the time, the plaintiff in error received the $725, the proceeds of the crop of 1840, from the commission merchant, there was no person in *esse*, who had the right to receive it from him, except the widow of the deceased, and he was legally bound to pay it to her, for he had received it as her agent.   If the plaintiff did pay it over to her, he discharged his legal obligation, and he is not responsible to any one else, unless the money had been demanded of him, or notice given him, not to pay it over, by some one, whilst he had possession of the money, whose title to it was superior to the title of the principal.

For this error, let the judgment be reversed and the cause remanded.