Boring et als. v. Williams, Treas'r.

## BORING et als. vs. WILLIAMS, Treas'r.

1. The provision in the Constitution of the United States, relative to the right of trial by jury, is restrictive upon the General Government only, and does not apply to the States of the Union.

2. It is competent for the Legislature to create an office, not specially provided for in the Constitution, and subject the incumbent to a trial for his defaults without the intervention of a jury.  In such case, the right of trial by jury never existed, and hence no constitutional provision is thereby violated.

3. A proceeding under the act of 1839 against a delinquent tax collector is properly instituted in the name of the county treasurer.

4 Although the condition of a bond given by a public officer is more specific than the statute prescribes, yet if it substantially conforms to the requirements of the law and imposes no additional obligation, it will be considered good as a statutory bond.

5. The design of the act of 1839, prescribing the mode of proceeding against a collector for failing to collect and pay over the county taxes, was to give a summary remedy against him, and any *one* or *more* of his sureties.

6. The provision in said act that the Judge of the County Court shall hold a special term to try such collector within twenty days after his default is directory merely, and does not prevent the judge from proceeding in the mode pointed out at any time afterwards.

7. A collector, who has proceeded under an assessment to collect the taxes, cannot refuse to pay them over, because the assessment may have been illegal or irregular—it not appearing that he has received notice not to do so from any one asserting an adverse claim.

8. The answer of a collector to a bill of discovery, filed by his securities against him and the county treasurer, is not admissible as evidence for the securities in a proceeding against them and the collector for his failure to collect and pay over the county taxes.

9. Where a collector of taxes holds the office for two successive years, and gives bonds with different securities, the treasurer cannot, even with the concurrence of the collector, appropriate money, which he knows has been collected on the assessment of one year, to the discharge of a balance due on the other, without the assent of the sureties, whose rights are to be prejudiced. Such a case presents an exception to the general rule applicable to the appropriation of payments.

10. A collector is not bound to collect a tax that has been assessed under an unconstitutional act, and cannot be made liable if he fail to do so.

Error to the County Court of Macon.    Tried before the Hon. Henry M. Elmore.

Motion by defendant as treasurer of Macon county against Boring, tax collector of said county, and seven out of eight of his securities, for his failure to collect and pay over the taxes of 1847.   The bond executed by the plaintiffs in error is conditioned that the said Boring "shall well and truly discharge all the duties which are or may be by law required of him as such tax collector, and shall pay over all monies which shall or may come into his hands by virtue of such office, as the law directs." By bill of exceptions it appears that the defendants below moved to dismiss the case, which being overruled, they demurred to the suggestion, which was also overruled, whereupon they excepted. The plaintiff then offered the bond in evidence, to which the defendants objected on the ground that one of the securities, to-wit, L. H. Cole, was not made a party defendant, but the court overruled the objection and the defendants excepted.   The plaintiff next offered to read from the minutes of the commissioners' court the following entry, made on the first Monday in March 1847—"Ordered, that 75 per cent. be laid on the State tax for county purposes in Macon county for the year 1847." It appeared that this order was not signed at the time by any of the commissioners or by the Judge of the County Court, but

was signed by three of the commissioners at different times af-
terwards, and the judge signed it at the time of this trial.   The
defendants thereupon objected to the order as evidence, which
objection was overruled, and they excepted.   In connection with
and in support of this objection, the defendants proposed to
prove that John McGar, one of the commissioners who had
signed the order, was a large creditor of the county, but the
court rejected the proof, and for this also the defendants ex-
cepted.   The plaintiff read in evidence an act passed on the
15th January 1844, authorising the commissioners' court of Ma-
con to assess and have collected by the tax collector of said
county "such an amount of money as may be sufficient to meet
and defray the current expenses" of the county.   To this the
defendants objected, and upon their objection being overruled,
saved the exception.   The tax assessed for the year 1847, it
was admitted, amounted to $7,832 40.   The defendants offered
to prove that the amount of money necessary to meet and defray
the current expenses of the county did not exceed $3,000 for
the year 1847, but the court rejected the proof and they ex-
cepted.   They next offered the answer of the said Boring to a
bill of discovery filed by his securities against him and the plain-
tiff, which was also rejected, and they excepted.   They then
read the answer of the plaintiff to said bill, from which it ap-
peared that the said Boring was entitled to a credit of $4,263 85
upon the assessment; that a portion of the assessment was made
and the money collected under the act imposing a special tax
on the slaves of non-residents; and that $930 20 of the tax due
for the year 1847 had been received by him and appropriated
with the assent of Boring in discharge of a balance due on the
assessment of 1846, during which year Boring's securities were
not the same as in 1847.   The defendants thereupon insisted
that they were entitled to be credited with the non-resident tax
and with the $930 20 appropriated as above stated, but the court
refused to allow either, and they excepted.   These several
rulings of the court are now assigned as error.

McLester & McIver and Belser, for the plaintiffs in error:
    1. It is doubtful whether the judgment entry identifies the
notice, and the bill of exceptions is silent as to it.—Gary v. Ed-
wards, 15 Ala. 105; Allums v. Hawley, 8 ib. 584.

2. The averment in the notice should be that the collector failed to collect the taxes, or that he collected them and failed to pay them over, and not that he " has failed to collect and pay over."—Howe v. Evans et al., 3 Black. 379.

3. The order of the commissioners' court assessing the county tax for Macon county, on the 1st Monday in March 1847, is an absolute nullity, and the special act of 1844 does not validate it. Besides, it was made without the signature of the commissioners, and amounts to nothing more than a verbal direction to the collector, which is nugatory.—Clay's Dig. 149, § 2; Act of 1844; (Record 12;) Treasurer of Mobile v. Huggins, 8 Ala. 440; Cullum v. Carey &c., 1 Ala. 351; Thompson v. Stickney, 6 Ala. 579; Collamer v. Dury, 16 Ver. 574; Coult v. Pike, 7 N. Hamp. 209. The time of holding the commissioners' court is not *directory*, as was held in Stickney v. Huggins, 10 Ala. 106; State v. Odom, 1 Speer. 266; Brown v. Simpson, 3 Stew. 331.

4. The tax provided for in the act of 1844 is an extraordinary one, and the same remedy cannot be used to recover it that is given by statute for the collection of taxes under the general law; —Act of 1844; (Record 12;) Clay's Dig. 575, § 96; Logan v. Barclay, 3 Ala. 261; Orr v. Duval, 1 Ala. 262;—and the judgment should not have been rendered against a part of the securities.—Alexandria v. Hunter, 2 Munf. 228; Westmoreland v. Hale, 11 Ala. 122.

5. The securities of the collector have the right to stand upon the precise terms of their contract, and the omission complained of includes no *legal* duty for which they or the collector are liable on their bond, on motion. If amenable at all, the collector is only chargeable as agent for Macon county.—McRay v. Dodge, 5 Ala. 388; Governor v. Hendrick, 2 ib. 728; Godbold v. Bank, 4 ib. 516; McCall v. McRae, 10 ib. 713; Miller v. Stewart, 9 Wheaton 680; Com'rs of Talladega v. Thompson, 15 Ala. 139; Upchurch v. Norsworthy, ib. 705; Green v. Hurd, 4 Term Rep. 553; Dean v. The Governor, 13 Ala. 526; Farmers' Bank v. Reid, 3 Ala. 290; Barton v. Lockhart, 2 St. & Por. 109.

6. Where one is indebted on several accounts, and makes a payment, the general rule of appropriation is, that the debtor may apply it to either account; if he does not, the creditor may

do so; and if neither does, the law will appropriate it according to the justice of the case.—Collins v. Gwyne, 23 Eng. C. L. 375; Stone v. Leyman, 15 Wend. 19; United States v. Kirk, 9 Wheat. 720; Burge on Suretyship, 123; U. States v. Wardell, 5 Mason 83; 1 Story's Juris. 494-5.

7. But this rule has its *exceptions*, and the $930 20 of the taxes collected for the year 1847 was improperly applied by the treasurer to the taxes of 1846. The treasurer *knew* how it was raised, and had no right thus to apply it without the assent of the sureties. Besides, the collector is elected annually, and required when thus chosen to give securities, *who are only bound for that year's taxes*.—Clay's Dig. 568, § 59; ib. 565, § 43; United States v. January, 7 Cranch 572; Postmaster General v. Furman, 4 Mason 335; Seymour v. Van Slyck, 8 Wend. 420; Com. v. Rutzell, 9 Watts & Ser. 114; Colerain v. Bell, 9 Met. 499; Postmaster General v. Norvell, Gilpin 126; Evans v. Keeland, 9 Ala. 42; Dumas & Co. v. Patterson, 9 Ala. 484; Governor v. Rollins, 7 ib. 79; Townsend v. Everett, 4 ib. 607; United States v. Eckford, 1 How. 250, 261; 1 Story's Eq. Juris. 501. The case of The United States v. Eckford, 1 How. U. S. Rep. 250, or 17 Peters 251, shows that the payment with the assent of the collector is a fraud on the securities for 1847. The case of Colerain v. Bell, 9 Metc. 499, shows that if the treasurer assents to it it is also a fraud on them; and the case of The Postmaster General v. Norvell, Gilpin's R. 106, further shows that the thing cannot be done without their assent. How are these decisions to be got over? The case from 23d Eng. Com. Law is a different one; the condition of the bond is different, and it should be closely examined; and when this is done, it will support the exception which we are contending for.

8. The collector should not have been charged with the non-resident tax collected by him.—Wiley v. Parmer, 14 Ala. 627; Crutchfield v. Wood, 16 ib. 702; Stetson v. Kemp, 13 Mass. 272; Drew v. Davis, 10 Ver. 506; State v. Findlay, 10 Ohio 51.

9. The answers of Boring and Williams should have been examined by the court, and the bill, to determine what the respondents meant.—Dumas v. Patterson, 9 Ala. 484; Collins v. Gwyne, 23 Eng. Com. Law 375; Holman v. Bank of Norfolk, 12 Ala. 370.

CLOPTON & COCKE, for the defendant:

1. The right of trial by jury does not extend to defaulting public officers.—6 Monr. 641; Hardin's Rep. 5.

2. It is a right that may be waived, and the acceptance of the office by the collector is a waiver.—The State v. Adams, 2 Stew. 231.

3. If any of the proceedings were irregular, the plaintiffs in error cannot make the objection.—Thompson v. Stickney, 6 Ala. 579; 16 Verm. 658; 15 Maine 29; 17 ib. 444; 1 Spears 263.

4. The credit for the non-resident tax was properly refused. See Thompson v. Stickney, *supra*, and other authorities cited.

5. The credit of $930 20, claimed as a portion of the tax of 1847, and applied to the payment of that of 1846, was also properly refused.—4 Mason 333; 5 ib. 82, 87, note; 23 Eng. C. L. Rep. 375; 29 ib. 228; 9 Metc. 499; 9 Wheat. 720; 15 Wend. 19; Burge on Suretyship, 123; 1 Story's Eq. § 459, g.

CHILTON, J.—This was a proceeding by motion against Boring, as tax-collector of the county of Macon, and the sureties upon his official bond, for his failure to pay over to the defendant, as treasurer of the county, certain taxes collected by him for the year 1847. The Judge of the County Court appointed a special term to hear and determine upon the motion, which after several continuances was finally disposed of by the rendition of judgment against the plaintiff in error and seven of his securities, for the sum of three thousand seven hundred and sixty dollars and fifty-one cents, the sum remaining unpaid, besides ten per cent. damages, amounting to the sum of three hundred and seventy-six dollars. Upon the trial of the motion the plaintiffs in error by their attornies moved to dismiss the proceeding, which motion being overruled by the court, they filed their demurrer to the suggestion, which was also overruled.

The grounds of objection to the proceedings are, first, that the statute under which they were instituted is opposed to that provision of the federal constitution which declares, "In suits at common law where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved," &c., as well as to that clause in the constitution of this State which declares, "The right of trial by jury shall remain in-

violate." The statute upon which the motion was predicated read as follows: " If any person authorised by law to collect the taxes in any of the counties in this State, shall fail to collect and pay the same to the county treasurer within the time prescribed by law, the Judge of the County Court, if of his own knowledge or on complaint of the treasurer, shall hold a special court within twenty days thereafter to try such delinquent collector; and if it appear that he has so failed to collect and pay over such taxes, said court shall enter judgment in favor of the treasurer against such collector and his surety or sureties in office for the amount of such county taxes so due and unpaid, together with ten per cent. as damages on the amount, provided that ten days' notice shall be given to such delinquent collector and his surety or sureties.—Clay's Dig. 575, § 96.

1. Upon the subject of the constitutional question raised by the plaintiffs in error, it may be remarked that article seventh of the amendments to the constitution of the United States was not intended to apply to the State Governments. These amendments were supposed necessary as furnishing salutary restraints and limitations of power on the Federal Government. They were demanded by the States as safeguards against encroachments on the part of the General Government, and not with any view of depriving the local legislatures of the States of any power they might otherwise legitimately have exercised. Such was the opinion of the Supreme Court of the United States in the case of Barron v. The City Counsel of Baltimore, 7 Peters' R. 247—see, also, 8 Wend. R. 100.

2. Neither do we think that the statute in question violates any provision of our State constitution. In our opinion it is clearly competent for the Legislature to create an office, not specially provided for by the constitution, and to subject the incumbent to be tried for his official default before a judge without the intervention of a jury. The officer is not bound to accept the office, and if he does so, it is upon the terms and conditions prescribed by the statute creating it. It was early determined by this court, that a man by accepting an office might waive a constitutional privilege.—Adams v. The State, 2 Stew. R. 231. This case decides that the sheriff, though an officer recognised by the constitution, may constitutionally be denied the privilege of voting except in cases of a tie. It is, however,

unnecessary to determine now whether we would be prepared fully to approve of the decision just quoted. The case before us does not require the argument to be pushed so far, as to contend that the legislature may require a party to waive a constitutional right, as a consequence of the acceptance of an office *created by the constitution,* as is the office of sheriff; for in the case before us the office is created by statute, and the tax-collector takes it and thus assumes to account as provided for by the statute to which we have alluded. The right of trial by jury in respect of his defalcation never existed and hence was not violated by the law, and as by the acceptance of the office he submits to be tried without a jury and by the summary mode prescribed by the statute in subjecting him to this summary jurisdiction, no right of his can be said to be violated.—See 1 Randolph's R. 2; 1 Wash. R. 356; 5 How. Miss. R. 434; 2 Munf. R. 266. We hence conclude that the clause in the constitution of this State, which declares that the right of trial by jury shall remain inviolate, was never designed to deny to the Legislature the power of providing summary remedies against defaulting revenue officers, as also similar remedies in the collection of taxes from the citizens. Such has been the practice from a period long anterior to the adoption of the constitution.

3. It is insisted by the counsel for the plaintiffs in error that this action should have been in the name of the Governor, to whom the bond is made payable. The answer to the objection is, that the statute expressly provides for the rendition of judgment in favor of the *treasurer* of the county. Before the passage of this act the mode of putting the bond in suit indicated by the counsel was correct,—(3 Stew. & Por. 15,)—but this act altered the law in this respect.

4. It is further objected that the condition of the bond is not such as the statute requires, and that not being a statutory bond the summary remedy afforded by the statute should not be allowed. We think there is a substantial conformity. The condition of the bond is more specific than the statute requires, but it superadds no obligation not imposed by the statutory condition.

5. Again it is argued that the motion cannot be sustained against seven of the eight securities to the bond—that the judgment must be against all or none. We think this construction of the act indefensible. True it gives a summary remedy in

derogation of the common law and is penal in its character, affixing damages for the collector's default, but we cannot doubt but that the design was to give the remedy against one or more of the sureties. The language is that the judge shall render judgment "against said tax-collector and his surety or sureties," &c. Although penal statutes must be strictly construed, yet such construction must not be in violation of the manifest intention of the Legislature.—Commonwealth v. Loring, 8 Pick. 370; United States v. Wiltberger, 5 Wheat. R. 76; Melody v. Reab, 4 Mass. R. 471; Jones v. Estis, 2 Johns. R. 379. The statute is remedial—was intended to avoid that delay usually consequent upon protracted litigation in suits at the common law, and being remedial should be so construed as to advance the remedy and suppress the mischief intended to be provided against. This remedy would be greatly embarrassed and indeed rendered wholly inefficient in a large number of cases, if it might only be resorted to in cases where all the securities could be notified.—Davenport v. Barnes, 1 Penn. R. 211; Welber v. Payne, 1 Ham. R. 256. This view also harmonises with the tenor of our previous legislation upon the subject.—Clay's Dig. 323.

6. That the statute requires the Judge of the County Court to hold a special court within twenty days after the default of the collector, to try such default, does not, as is insisted by the counsel for the plaintiffs in error, deny to him the power to hold such special court after that time. The reasoning employed to show that the fifth proposition is not maintainable is equally applicable to this. The object was to provide against delay, and the statute directs the judge to proceed within twenty days; but it would be a construction clearly repugnant to the manifest intention of the framers of the law, to hold that because proceedings were delayed until after the lapse of twenty days they should not be instituted at all, and that the defaulter should be entitled, in consequence of the omission of the County Judge to order a special court, to all the delay against which the act was intended to provide. This provision is directory merely and the proceedings may well be commenced after the lapse of twenty days from the happening of the default.—Treasurer of Mobile v. Huggins, 8 Ala. R. 440; Stickney v. Huggins, 10 ib. 106.

7. The counsel for the plaintiffs in error also argue that the

assessment was illegal; that a portion of the tax which the collector undertook to receive and pay over was not authorised by by the constitution to be collected; and that the commissioners' court imposed a greater tax than the law would justify, and having exceeded their authority the assessment is void and the collector not responsible. We need only observe, in reply to this objection, that the records of the commissioners' court show that the assessment was made, and the statute gives them the power to make it. Their discretion as to the amount to be collected is limited only by what they may deem "sufficient to defray the current expenses of the county." If they have erred in their judgment—if the amount assessed is greatly more than is required to meet and defray the current expenses of the county, we will not say there is no remedy for those who have the taxes to pay; but it would be strange indeed, could the collector, after having proceeded under the assessment to collect the tax so assessed, set up the irregularity of the assessment to avoid paying them over. The order of assessment was not *coram non judice;* the court, as we said, had jurisdiction, and that order however irregular, is not liable to be impeached collaterally by the collector, but stands of full force until vacated by a direct proceeding for that purpose. This is a familiar elementary principle of law. It follows then, that the plaintiffs in error were properly denied the privilege of introducing proof showing that the assessment was greater than was required to meet the current expenses of the county.

We may adduce another argument in further confirmation of this conclusion. The tax-collector is a public officer elected by the people of the county and charged by law with the collection of the public revenue, and bound to pay it over to the person appointed to receive it. In respect to the county taxes he is the agent of the county, and after he has proceeded in obedience to an assessment made by the commissioners, before he executed his bond, to collect the taxes and has them in hand, it does not lie with him to say, when sued for the same by one representing the principal, you have exceeded your authority in levying a higher tax than was necessary. The assessment I regarded as sufficient authority to enable me to make the collection, and all the tax-payers acquiesce in it, but it does not justify the county in receiving it from me! He thus acknowl-

HARVARD LAW SCHOOL LIBRARY

edges the existence of the authority to get possession of the fund, and then pleads the absence of it so as to enable him to retain it. Such is not the law. If the taxes have been irregularly assessed, it is a question which can be raised by those who have them to pay,, and they and not the tax-collector are the persons who must litigate it. Neither he nor his securities have any interest or concern in it whatever, never having been notified to refrain from paying over the amount by any one asserting an adverse claim. It is very clear that a payment by him before receiving such notice would amount to an effectual protection.—Upchurch v. Nosworthy, adm'r, &c. 15 Ala. 705; Story on Agency, § 301, and note 1 to page 381, (2d edit.) where numerous cases are collated. See, also, opinion of Lord Kenyon, C. J., and Buller, J., in Greenway v. Hurd, 4 Term Rep. 553-4; Thompson v. Stickney, 6 Ala. 579. In the case last named there was a mere verbal assessment which was confessedly illegal, yet it was held that the collector could not raise the question on a rule for failing to pay over.

This view disposes of the several questions attempted to be raised by the counsel for the plaintiffs in error as to the illegality of the assessment, the failure to sign the record, the permitting McGar to place his signature to it, he being a creditor of the county and one of the commissioners, and the signing by the County Judge at the time of the trial.

8. Another exception is, that the answer of Boring, the collector, made to a bill filed by the securities for a discovery, should have been allowed as evidence. It is certainly true that in a controversy between his two sets of securities,—those for the year 1846 and the present plaintiffs in error who were bound on his bond for the year 1847,—Boring would be a competent witness; being equally bound to indemnify each of them against his own default, his interest would be balanced. But such is not the posture of the present case. The controversy here is not between the sureties on the different bonds, but between the obligors on one of the bonds and the treasurer; and to allow the answer as evidence would be to permit a party to make his own admissions or declarations evidence in his own favor in a controversy to which he is a party, and bound for the recovery, should one be had. It is very clear that the exclusion of the answer of Boring was entirely correct.—Julian et al. v. Reynolds, 8 Ala.

680, and authorities there cited; see, also, Causey v. Driver, 13 Ala. 821; 3 Phil. Ev. C. & H. notes, 931-2; Greenl. Ev. 210; Stark. Ev. 288; Gres. Ev. 24.

9. It appears by the answer of the defendant in error, which was read in evidence upon the trial in the court below, that he executed to Boring, the collector of taxes, his receipt for eleven hundred and fifty-seven dollars and ninety-one cents, dated the 13th day of January, 1848; which receipt specified that the amount was first to be applied to the payment of a balance then due of the taxes for the year 1846, (for which year Boring was also tax-collector, but with a different set of sureties,) and the remainder, if any, to be applied to the payment of the taxes due for the year 1847, for which the present securities were bound. Of this sum, $32 34 were collected as for taxes due for the year 1846, and nine hundred and thirty dollars and twenty cents for the year 1847. These sums were not paid in money to the treasurer, but the tax-collector executed his receipts which he delivered to him to be used by the treasurer in settlements to be made by him with the tax-payers, which receipts the treasurer agreed to receive as so much money, and thereupon executed his own receipt above mentioned. The balance of said receipt was paid in cash. It further appears that this sum of $930 20 so collected of the tax-payers by the treasurer, embraced $531 55 due for taxes to the State for the year 1847, and the remaining sum of $398 68 was for taxes due to the county of Macon for the same year. These monies were applied by the treasurer to the payment of a balance due from Boring for the taxes of 1846, and the question is whether the same should not be held as a payment for the taxes of 1847 and be credited to these securities? We are unable to perceive how the right of the securities to have the credit for the whole amount of the $930 20 can be affected by the fact that a portion of it was collected as State tax. The securities were equally liable for the payment of the State as for the county tax, and the same bond secured the payment of both. It constituted a portion of the fund for the collection and payment of which they were bound, and if they have the right to insist upon the application of the county tax collected by the treasurer so as to extinguish *pro tanto* their liability, we think since the treasurer collected the tax to be applied to the payment of taxes due the

34

State, the same principle of law which would forbid the misapplication of the county tax to the service of the year 1846, would equally apply to the portion collected as State tax. The true question as applicable alike to both is, can the treasurer by the consent of the tax-collector apply the funds received as taxes for the year 1847, for the collection and payment of which the present plaintiffs in error were bound, to the payment of an indebtedness of the tax-collector for taxes collected in 1846, for which other securities were responsible? We confess we have had much difficulty with this question, and this difficulty is by no means removed by an examination of the authorities applicable to the point. The general rule respecting the application of payments is, that where they are made by a debtor to a creditor, the debtor has the right to direct the application, but if he fails to give direction as to the application, then the creditor may apply the payment as he chooses. In the case at bar both the principal debtor and the person to whom by law the payment is to be made agree upon the application, and unless the facts of the case take it without the general rule as to the application of payments, it is clear that the securities cannot have relief. The doctrine laid down by Mr. Burge would seem to be adverse to their claim to be allowed the $930 20 as a payment upon their liability. He states the doctrine broadly that where the debtor has two sureties for two different debts, he may elect to which of the debts his payments shall be applied, and consequently which of the sureties he will discharge.—Burge on Surety, 122. He further says, the payment by the principal binds the surety, for the latter cannot control the principal in making such application as he chooses.—Ib. 123. He cites Saunders v. Taylor, 9 Barnw. & Cres. 35; Williams v. Rawlingson, 3 Bing. 71, and Collins et al. v. Gwynn, 9 ib. 544—(S. C. Eng. Com. L. Rep. 375.) The case last cited is very nearly analogous to the case at bar. That was a suit upon a tax-collector's bond providing for due payment, against the surety of the collector. Breach that the collector had not made due payment. The court held that the misapplication of the taxes by the Receiver General at the request or by the direction of the collector, whereby monies, collected as taxes for the years 1828-9, for the collection and due payment of which the defendant was bound as surety, were appropriated to the service of a former year for

which another surety of the collector was responsible, did not discharge the surety, but was a breach of the bond for which he was liable.—See, also, Gwynne v. Burwell, 2 Bing. (N. C.) 7; 29 Eng. Com. L. Rep. 228.  We think it may be conceded that the English cases show the law to be adverse to the plaintiffs in error upon the point under consideration, and we are free to confess that the reasoning upon which they are based is difficult to overturn. · But it is very obvious they do not attain the justice of the case, for every one must at once agree that it is repugnant to the first principles of equity and good conscience to permit an insolvent collector to abuse his trust by collecting monies for one year for the payment of which to the treasurer his sureties are bound, and applying it to the discharge of other sureties who are bound for a previous years' default.  We, however, should not permit the hardness of the case to have the slightest influence upon our determination, were the law settled in this country in accordance with the English cases to which we have refered.  Is the rule thus established with us?  We will as briefly as we can recur to some of the American cases to determine this question.  In the case of the United States v. January, 7 Cranch, 572, which appears to be mainly relied upon, the collector of the revenue had given two bonds at different periods for his official conduct.  By the second bond the securities undertook not only for the future, but likewise for the past fidelity of the officer.  The supervisor, it appears, kept a general account between the United States and the collector, upon which his payments were credited, he having promised to apply all the payments he should receive to the payment of the first bond, before carrying any of them to the account of the last.  A large balance being found due from the collector on the final trial, and it appearing that the first bond would have been fully discharged if the promise of the supervisor had been carried out, the question arose whether such promise was such an appropriation of the money as was binding on the United States, without some specific act of appropriation, as entries upon the books.  The court in considering the case, and after laying down the general principle of the application of payments in ordinary cases, say, " the rule adopted in ordinary cases is not applicable to a case circumstanced as this is; where the receiver is a public officer not interested in the event of the

suit, and who receives on account of the United States, where the payments are indiscriminately made, and where different sureties, under different obligations, are interested. It will generally be admitted that monies arising due and collected subsequently to the execution of the second bond, cannot be applied to the discharge of the first without manifest injury to the surety in the second bond; and, *vice versa*, justice between the different sureties can only be done by reference to the collector's books, and the evidence which they contain may be supported by parol testimony." The facts of the case before us are dissimilar from those in the case cited, as here the actual appropriation of the payment has been made by the principal and treasurer, and the question goes beyond the decision in that case, and require us to go further and hold that such misapplication, though made with the consent of the principal, shall not be binding on the surety. Besides, the comments of Judge Story, in reviewing the case of the United States v. January, tend to weaken its authority upon the point in question before us, so far as it is applicable. In The Postmaster General v. Norvell, Gilpin's Rep. 106-125, two bonds were executed by one Bache to the government, for the performance of the duties of postmaster at Philadelphia. Upon the execution of the last bond a large balance was chargeable against him for receipts under the former bond, and it was insisted that monies collected under the last bond had been applied to that antecedent balance. Judge Hopkinson said, "Can the burden actually resting on the first sureties; can the forfeitures actually incured by them, be shifted by the process of appropriation without the consent or knowledge of the second surety, from the shoulders of the first and be put upon the second? I am," says he, "most clearly of opinion that it cannot; that each set of sureties must answer for its own defaults, and is entitled to be credited with its own payments." He then cites the case of The United States v. January, above quoted. The case of The United States v. Gabriel F. Irving et al. 1 How. (U. S.) Rep. 250, was an action against the sureties of one Samuel Swartwout, late collector at the port of New York. One point cited for the opinion of the Supreme Court, was whether the payments made by Swartwout subsequently to the 28th day of March 1834, should be applied to the discharge of his indebtedness existing on that day, the

same accruing during his second term of office, or whether the same should be applied to the payment of his default accruing after that time. It appears that one Eckford was one of the sureties on his bond, from the 28th March 1830, to the 28th March 1834. The Supreme Court re-affirm the doctrine laid down in United States v. January, "that the rule which applies in ordinary cases as to the application of payments, is not applicable to a case where different securities under distinct obligations are interested." McLean, J., in delivering the opinion of the court, said, "The collector is the mere agent or trustee of the government. He holds the money he recieves in trust, and is bound to pay it over to the government as the law requires; and in the faithful performance of this trust the sureties have a direct interest, and their rights cannot be disregarded." It will, however, be observed that in the case just cited, the collector had paid over the funds without any special application or direction of them to the extinguishment of any particular indebtedness, so that although the general language employed might cover the case at bar, the facts of the case did not require it, so as to constitute it an authority. It is, however, persuasive, as indicating the view of the learned judge delivering the opinion. The same judge had decided some three years before that time the case of Myers v. The United States, which came up upon the circuit, and in which he held a similar doctrine.—1 McLean's Rep. 493. The authorities are collected by Messrs. Hare & Wallace, (1 Amer. Lead. Cases, 156,) who thus state the exception to the general rule: "That it will not apply to those cases in which the relations between the creditor and other parties to be affected are such as to make it part of the contract that there shall be a different application." The examples they give, as affording an application of the principle asserted, are germain to the case at bar. They add, "Thus, when a recieving or collecting officer has given bond with different sureties, for successive periods, and becomes a defaulter, payments accruing due and paid during the period to which the second bond applies, are not as against the sureties, to be considered as applied in the order of time so as to relieve the sureties in the first bond at the expense of those in the second, but must be credited to the obligation for which the second set of securities are bound; for the contract of the sureties is that

each set is to be liable only for actual defaults during the period for which they were bound : And however the accounts may be made up and payments applied between the officer or principal debtor and the government or creditor, the amount of the default for which any set of sureties are to be made liable is to be ascertained by the difference between the monies received and the monies paid over, during the period for which they were sureties." Citing in addition to the cases above refered to, Seymour v. Van Slyck, 8 Wend. Rep. 404; Stone v. Seymour, 13 ib. 19; Barr et al. v. Howlin, Alcock & Napier, 197; Williams v. Rawlinson, 362-371.

Thus stand the authorities upon the point, and since it is quite clear that the American cases show a decided leaning in favor of allowing the sureties on the bond of 1847 the benefit of payments made from the collection of taxes for that year, notwithstanding the collector and treasurer have both consented to apply them to the discharge of the collector's liability for 1846, and as this view is so much more consonant with the justice of the case than the contrary, we have after the most mature deliberation arrived at the conclusion that the court below erred in refusing to credit them with the $930 20 so misapplied. It will be remembered that in this case the treasurer himself collected the money from the tax-payers, so that no question can be predicated upon a want of notice as to the character of the funds ; and the source from whence he derived the payment clearly indicated how it should have been credited.—1 Amer. Lead. Cases, 142, and authorities.

10. In conclusion, it may be well to add that it is not shown by this record how much of what is termed the non-resident tax was collected by Boring. He was not bound to collect that portion of the tax which this court has declared in Wiley v. Parmer, (14 Ala. 627,) could not constitutionally be collected, and if he failed to collect it, his sureties cannot be chargeable by reason of such failure.

These views have been expressed at greater length than I desired, but some of the principles involved are important and of first impression in this court. Moreover, our conclusion is different from that heretofore attained on the former investigation, in respect to the application of the payment to the treasurer.

Let the judgment be reversed and the cause remanded.