## RAMEY ET ALS. *vs.* GREEN, ADM'R.

1. Where one, to whom a life estate in slaves is bequeathed in another State, and who is appointed executrix of the will, qualifies as such and takes possession of the property, the legal title is hereby vested, and a subsequent grant of administration to a third person by the Orphans' Court of this State, she having removed here with the slaves, is a nullity, and will confer no title on purchasers at a sale made by such administrator.

2. The possession by a wrong-doer of slaves, bequeathed for life, with remainder over, accompanied with a claim of the entire title, is sufficient to authorise the remainder-men to apply to a court of equity, to have their ultimate interest in the property protected and secured.

3. Although a supplemental bill is to be regarded as a continuation of the original bill, yet it is not to be understood that matter, which may vary the relief, to which the complainant was entitled when the original bill was filed, may not be added by way of supplement, provided the subject matter which may vary the relief, to which the complainant was entitled when the original bill was filed, may not be added by way of supplement, provided the subject matter and title are still the same.

4. Where one, claiming to act as administrator, has wrongfully sold the absolute property in slaves, bequeathed for life, with remainder over, the remainder-men, after the termination of the life estate, may charge him with their value, and may, therefore, properly make him a defendant to an original bill filed, during the life of the tenant, to protect and secure their ultimate interest, and to a supplement, filed after the tenant's death, to recover the slaves, or the purchase money, for which they sold.

5. Where a remainder in property has been bequeathed to several, as tenants in common, all of them are necessary parties to a bill, which seeks a sale of the property for the purpose of distribution, unless some reason is shown that renders it unnecessary, or that will excuse the omission.

6. Remainder-men are only entitled to the profits, or interest on the value of property, from the death of the tenant for life, although it may have been converted in the life-time of the tenant.

ERROR to the Chancery Court of Benton. Tried before the Hon. D. G. Ligon.

THE original bill in this case was filed in the name of Samuel Green, as administrator of William Fagan, and also Silas Fagan, and in behalf of such of the heirs and legatees of William Fagan, sen., deceased, as should see proper to make themselves complainants, against John Ramey, sen., John Ramey, jun., and Caty Fagan. It alleges that William Fagan, sen., of the county of Morgan and State of Georgia, on the 12th day of January 1829, duly executed his last will and testament, by

by which he bequeathed and devised to his wife, Caty Fagan, after the payment of all his just debts, all his estate, real and personal, consisting of four slaves, two pieces of land and all his house-hold furniture and stock of every description, during her natural life, and at her death, to be equally divided amongst his children, to-wit, the said William and Silas Fagan and six others, all of whom are named in the bill. The shares, however, that were to be allotted to some, at the division of the estate by the terms of the will, were given to their children, whilst the shares to be allotted to others were given absolutely to them. It is, also, alleged that the will was admitted to probate in the county of Morgan, in the State of Georgia, and that Caty Fagan, who was appointed executrix, took upon herself the execution thereof, but that John C. Reese, who was appointed executor, did not qualify as such; that there were but few debts against the estate, which were soon settled, and afterwards Caty Fagan, the executrix, removed to the State of Alabama, and brought with her the slaves and other personal property bequeathed by the will of the testator. It is, also, alleged that Caty Fagan was very old and weak-minded and incapable of attending to and conducting her business, and that from the importunities of John Ramey, the said Caty Fagan permitted him to sell the slaves, with the exception of one negro girl named Matilda, the said Ramey pretending to act as administrator of the estate of William Fagan, deceased, but the bill charges that his appointment as such, if one was made, was void, for the reason that the property was at the time of the grant of such letters in the hands of the rightful executrix; that said Ramey sold two negro boys and a negro girl, and that the two boys are in the possession of John Ramey, jun., the son of the pretended administrator, who claims to have purchased one at his father's sale, and alleges that at said sale William Fagan purchased the other and gave his note for the purchase money. The bill also states that afterwards John Ramey sued on the note given by William Fagan, jun., who died pending the suit, and that the complainant was made a party defendant, as his administrator, and that he, supposing that said Ramey had authority to receive and dispose of the effects belonging to the estate of William Fagan, sen., deceased, made no defence and judgment was rendered against him by default, for three hundred and fifty-two dollars

and sixty-four cents, besides cost; that a *fi. fa.* was issued thereon and was returned no property, whereupon suit was instituted on the bond of the complainant as administrator of William Fagan, jun., and his securities, and judgment recovered against them, upon which execution has issued; that the said Ramey designs to get the possession of the money, that he may waste the same; and that unless the property is stopped in specie, and security given for its forthcoming at the death of Caty Fagan, it will be squandered and lost to the legatees in remainder, and that Ramey will be unable to respond for the amount of the value thereof, and if permitted to collect said judgment, the same will also be lost.

The bill prays that the administration of John Ramey be set aside, and that he be enjoined from collecting said judgment, and that the property be so secured that it can be delivered up to the legatees, after the death of Caty Fagan, for the purpose of division, according to the will, and for general relief. The complainant afterwards filed an amended and supplemental bill, in which it is alleged that he had purchased the interest of Betsey Dodson, one of the legatees, previous to the filing of the original bill, and he sets out a copy of the transfer from her and her husband, George Dodson; and by way of supplement, it is alleged that Caty Fagan, the widow of William Fagan, deceased, who was the tenant for life, had died since the filing of the original bill; that she retained the possession of the girl Matilda until her death, but that John Hughes had taken possession of said slave since, and threatens to remove her beyond the jurisdiction of the court; and it is prayed that said Hughes be made a party defendant and enjoined from removing said slave. There is also a prayer that said slaves be apportioned amongst the legatees, and for general relief.

The bill was again amended, and in the amendment it is alleged, amongst other things, not material to be stated, that before the commencement of the suit by John Ramey against William Fagan, jun., the said William Fagan had paid to the said Ramey one hundred dollars on the note, upon which the suit was instituted, and had taken his for the same, and that it was agreed between the counsel of the said Ramey and the said complainant that the note should be credited with this amount and the judgment be rendered for the balance on said note, but

that, in violation of this agreement, judgment had been taken for the whole amount of said note, without allowing said credit. The amendment, also, charges that John Ramey had notice of the will of William Fagan, deceased, at the time he procured letters of administration from the Orphans' Court of Benton, and that Caty Fagan received possession of said slaves in the State of Georgia and brought them with her to this State.

John Ramey, sen., and John Ramey, jun., answered, but as the opinion of the court is based upon questions raised on demurrers to the original, amended, and supplemental bills for want of equity, and misjoinder, and non-misjoinder of parties, it is unnecessary to state their contents, further than to say that William Ramey, sen., admits the sale of the slaves by him, and the receipt of the price of the girl, but he insists that he had authority to sell them by virtue of letters of administration on the estate of William Fagan, sen., and an order of sale, granted to him by the Orphans' Court of Benton county. The proof sustained all the material allegations, not admitted by the answers. The chancellor overruled the demurrers, and on final hearing decreed in favor of the complainant, which is now assigned as error.

J. B. MARTIN and WHITE, for the plaintiffs in error.

RICE, for the defendant.

DARGAN, C. J.—William Fagan died in Morgan county, in the State of Georgia, having duly executed his last will and testament, whereby he bequeathed the slaves in controversy to Caty Fagan for life, with remainder over to his children, to be divided at her death, in the manner directed by his will. After his death, the will was regularly admitted to probate in the State of Georgia, and letters testamentary issued to Caty Fagan, who was appointed executrix. As such she received possession of the slaves, and they were afterwards removed to this State, either by her, or with her consent. Under these circumstances, it is manifest that the Orphans' Court of Benton county had no jurisdiction to grant letters of administration on the estate of William Fagan. The legal title to the slaves had vested absolutely in Caty Fagan, and the letters of administration granted to John Ramey gave him no right or title to the slaves what-

ever.—See Treadwell v. Ramey, 9 Ala. 590. Consequently, it follows that his acts as administrator, in selling the slaves, are void, and the purchasers from him acquired no title thereby.

2. It is equally clear that the remainder-men are entitled to come into this court, to have their ultimate interest protected and secured, when it is shown that there is danger of its loss; and that the property is in possession of a wrong-doer, who claims the entire title as his own, is an ample reason for those in remainder to apply to a court of chancery for protection.— Lyde et al. v. Taylor, et al., 17 Ala. 270. This shows that the original bill is not without equity, for the title of the legatees in remainder to the slaves in controversy is in no wise affected by the sale, and as they were claimed by the purchasers and the administrator, and the title of the legatees denied, a sufficient ground for equitable interposition is made out.

3. Nor do we think the supplemental bill liable to the objection that it does not state supplemental matter. It is true that a supplemental bill is said to be a continuation of the original bill, (Hill v. Hill, 10 Ala. 527;) but I do not understand that matter, which may vary the relief from that to which the complainant was entitled by his original bill, may not be added, by way of supplement, provided the subject matter and the title of the complainant be the same in both bills. It is true that a complainant cannot support a bad title by acquiring a good one, after the original bill is filed, and bringing this subsequently acquired title before the court by a supplemental bill. Thus, if one files a bill as heir at law and upon an issue directed, he is found not to be the heir, he cannot support his original bill by purchasing the title of the heir, and bringing that forward by supplemental bill.—Daniel's Ch. Prac., vol. 3, 1656-7. But if the subsequent event merely gives the immediate right of possession, in consequence of the original title, there can be no objection in allowing this subsequent event to be brought before the court by a supplemental bill.—Daniel's Ch. Prac., 1657; Saunders v. Trost, 5 Pick. 276.

4. We also think it is equally clear that John Ramey, who claimed to act as administrator, was a proper party defendant, both to the original and supplemental bill. He sold the slaves and has received the purchase money for some of them, one of them at least, as is shown by his answer, and if this slave is not

recovered, the legatees may charge him with the value of it. Indeed, there can be no objection to their right, (after the death of their mother, who was tenant for life,) to confirm his act of sale and charge him with the purchase money.—Upchurch v. Norsworthy, 15 Ala. 705, and cases there cited.

5. The only remaining question is whether all the legatees in remainder should have been made parties, and whether the bill can be maintained, filed as it is; in the name of the complainant alone, but in behalf of such of the legatees as will make themselves parties complainants and contribute to the prosecution of the suit. It may be stated, as a general rule, that a legatee may file his bill against the executor to recover his own legacy only, (Story Eq. Pl., § 104; Brown v. Ricketts, 3 Johns. Ch. R. 553; Pritchard v. Hicks, 1 Paige, 270 ;) or he may sue in behalf of himself (if he be not the residuary legatee) and all other legatees, in order to obtain a settlement of the accounts and a payment of all legacies:—Story Eq. Pl., and authorities there cited. But it must be borne in mind that such suits are brought against the representative of the deceased, seeking to recover a legacy out of a general fund, and not upon a title to a specific chattel. In the case before us, however, the suit is not against the representatives of the deceased, seeking to recover of him a legacy, but is brought on a legal title to slaves in the possession of wrong-doers. It is true that the title was acquired by the will of William Eagan, sen.; but the suit is not brought by the complainant as legatee, but as a tenant in common in remainder, and the bill shows the title as such to be perfect and complete. How can the court order a sale of the slaves, or any of them, as prayed by the supplemental bill; without having all the parties, who have title to them, before it? It is well settled that no one is bound by a decree who is not a party to it, nor can the title of one, who is not a party to the suit, be divested by a judgment. If the court proceed to order a sale of the slaves, or any of them, the purchaser could not obtain the title of those, who are not parties to the bill, but they could assert their title afterwards against him, and the decree of sale would afford him no protection.

Indeed, it is said, that if legacies be charged upon real estate, and not on the general personal assets, one legatee cannot file a bill in behalf of himself and the others, but that all the legatees

JANUARY TERM, 1851.      777

Ramey et als. v. Green adm'r.

must be made parties.—Morse v. Sadler, 1 Cox, 352; Hallett
v. Hallett, 2 Paige, 22.   The reason of this distinction can only
be, that the legacies create a charge on the land, and the pur-
chaser cannot obtain a clear title, unless all the legatees be
brought before the court.   But if this distinction should be con-
troverted, we apprehend that none will doubt that all tenants in
common, whether they derive title by will or otherwise, must
be brought before the court, before their title to the property
can be divested by a sale under its decree.   The bill is defec-
tive for the want of proper parties.   All who claim, or who are
entitled to an interest in the slaves, under the will of William
Fagan, deceased, must be brought before the court, either as
complainants or defendants, unless, indeed, there be some rea-
son which would render it unnecessary, or excuse the omission.
But nothing of this kind is suggested in the bill, and we must,
therefore, reverse the decree and remand the cause, that the
proper parties may be made.   As, however, the equity of the
bill is fully established, all the injunctions will be retained, until
finally disposed of by the chancellor.

In regard to the time from which the complainants can claim
the profits of the slaves, or the interest on their value, if they
should elect to take the purchase money of any that have been
sold, it is only necessary to observe, that their right to posses-
sion accrued at the death of Caty Fagan, and from that time
only can they *claim, as remainder-men,* the possession or profits
of the slaves.   If the defendants, or either of them, are liable
for the use of the slaves during the life of Caty Fagan, (which
is a question we have not examined,) the administrator of Caty
Fagan alone can call for an account during that time.

Let the decree be reversed and the cause remanded.

CHILTON, J., not sitting.