NEW-YORK,
May, 1808.

De Fonclear
v.
Shottenkirk.

Where there
was contradict-
ory or doubtful
evidence, whe-
ther a sale of a
chattel was ab-
solute or not,
the court re-
fused to set a-
side the ver-
dict of a jury.
Where a slave
was delivered
to a person to
be kept, or up-
on trial, and
the bailee suf-
fered the slave
to go to the
next village in
the evening,
when the slave
ran away, it
was held, that
the bailee was
not responsible.

## De Fonclear *against* Shottenkirk.

THIS was an action of *assumpsit*. The declaration in the case contained two counts ; the first count was on a special agreement, by which the defendant agreed to take a negro slave belonging to the plaintiff, upon trial for a day or two, and if the negro did not like the defendant for a master, the defendant undertook to return him. The second count was, on the sale of the negro, for the purchase money. The defendant pleaded *non assumpsit*.

The cause was tried at the last *Montgomery* circuit, before Mr. Justice *Van Ness*.

From the evidence given at the trial, which was minutely detailed in the case, it appeared that a conversation had taken place between the plaintiff and the defendant, relative to the sale of a negro slave, belonging to the plaintiff, and that the price was mentioned to be 300 dollars. The slave not appearing satisfied with the change of masters, the plaintiff's wife said to him that he might go a day or two and see how he liked the defendant. The defendant said he would use him as well as one of his own family. One of the witnesses heard the defendant say, on the next day, that the negro had gone home with him from the plaintiff's and worked on his farm ; that towards evening he wanted to go to the village of *Johnstown* to get some tobacco ; that the defendant told the negro he might go to *Johnstown* after supper ; the negro went out after supper for that purpose, as he pretended, but never afterwards returned, either to the defendant or the plaintiff. The defendant gave notice to the plaintiff of his elopement, and refused to take any measures to pursue or bring back the negro. It appeared also, that the defendant had said, on the day the negro went to his house, that the writings were to be drawn the next evening, as he was so busy then, that he could not attend to it.

On the part of the defendant, it was proved that the <span>NEW-YORK,</span> plaintiff, after the negro ran away, said " he had lost 300 <span>May, 1808.</span> dollars, for in a day or two he had sold him." The defendant was a *Frenchman*, and did not speak *English* well. <span>De Fonclear</span> Another witness testified, that a few days previous to the <span>v.</span> <span>Shottenkirk.</span> alleged sale, the plaintiff had observed, that he was afraid that the negro was going to run away, and wished to know how to secure him ; and that after he had run away, he went to the printer, and directed an advertisement to be printed, offering a reward of ten dollars to apprehend the negro ; but afterwards requested the advertisement to be postponed until he had taken advice.

The judge charged the jury, in substance, that if from the evidence they should be satisfied that the sale of the negro was absolute, the plaintiff would be entitled to their verdict ; but if the jury should be of opinion, that the sale was not absolute; but that it was a sale upon trial, that then, while the slave remained in the possession of the defendant, he was bound to take as good care of him, as he would of his own slave ; and that if he had not done so, the plaintiff was entitled to a verdict ; that if the jury were of opinion that the defendant was to take the negro upon trial, and that the sale was to become absolute or not, at the defendant's election, depending on the negro's willingness or unwillingness to stay with him, (in which point of view he thought the evidence placed the contract,) then, as the negro had run away before the expiration of the time within which such election was to be made, the defendant was not liable ; that if the sale was not absolute, it was incumbent on the plaintiff to show, clearly, on what terms it was made ; that the negro, in his opinion, while in the defendant's possession, was at the risk of the plaintiff, and that the defendant was not bound to pursue him, having given notice of his flight, to the plaintiff.

A motion was made to set aside the verdict, on three grounds. 1. As against evidence. 2. For the misdirection of the judge. 3. On account of newly discovered evidence.

NEW-YORK,
May, 1808.

De Fonclear
v.
Shottenkirk.

*Metcalf*, for the defendant.   1. There was sufficient evidence of an absolute sale, and the jury should have been so directed.   Three things are necessary to constitute a contract of sale ; a thing to be sold, a stipulated price, and the consent of the acting parties.\* As soon as the parties have agreed on the thing, and the price to be paid,† or, in other words, as soon as the bargain is struck, the property in the thing, is transferred to the vendee.‡ A distinction is to be made between the *contract itself*, and the execution of it.   The contract is complete as soon as the commodity and the price are agreed upon.   The *execution* of it consists in the delivery of the article by the vendor, and the payment of the money by the vendee.§   In the present case the contract of sale was complete ; and the negro was, in fact delivered to the defendant, and went home with him.   This shows that there was an end to all discussion as to the terms of the contract of sale, and that it was complete ; and it remained only to have it reduced to writing, a thing not essential to the sale of a chattel.\*\* The objections to the slave could not affect the contract between the parties, unless the contract was clearly made to depend on his consent, and that expressed in the contract.   There was no evidence of any such condition. The expression used by the plaintiff, after the slave ran away, was under the mistaken idea, that it was essential to the contract of sale, that it should be in writing ; and as he was a foreigner, imperfectly acquainted with our language, great allowance is to be made.

2. There may be a sale *upon trial.*   Such a contract of sale is perfect, and the thing delivered upon trial, remains at the risk of the vendee.††   Considering, however, the delivery on trial, as a bailment, or lending for use, the defendant did not use that diligence in keeping the negro, which the law requires of him.‡‡   He ought not to have permitted him to go to *Johnstown*, in the evening.

[From the opinion delivered by the court, *it is* unnecessary to state the evidence or the observations of the counsel on the third point.]

\* *Pothier trait. du Contrat de Vente.* n. 3.
† *Just. Inst. lib. 3. tit. 24. Dig. lib. 18. tit. 6. l. 8.*
‡ *2 Black. Com.* 448.

§ *Puffendorf Law of Nat. and Nations, lib. 5. c. 5. § 3.*

\*\* *Puffendorf, lib. 5. c. 5. § 2. ad finem.*

†† *Pothier du Contrat de Vente.* n. 264. 266. *Domat. lib. 1. tit 2. § 4. art. 8.*
‡‡ *1 Bac. Ab.* 243. *Jones on Bailment,* 118, 119, 120.

*Cady* and *Van Vechten*, contra. 1. The only question is, whose property was the slave at the time he ran away ? The whole evidence as to the sale, was submitted to the jury, who were competent judges of the fact. The plaintiff's directing the slave to be advertised, and saying that *his slave* had run away, clearly showed that he still considered him as his property. That writings relative to the sale were to be drawn and executed by the parties, proves that they were to be the evidence of the contract, not that there was an absolute sale before. A chattel may be sold by *parol*, but if the parties agree that the contract shall be in writing, then the writing is essential to the consummation of the contract. If there was an absolute sale, without any precedent condition, there would have been no necessity to defer the execution of the writings. It is evident, that the defendant was to take the negro upon trial, and if he liked him, then there was to be a sale, otherwise not.

2. As to the bailment. It was a bailment for the benefit of both parties. It was enough that the defendant took the same care of the slave, as a prudent man would do of his own property. His permitting the slave, at his request, to go out in the evening, was not such an act of neglect as to make him responsible. He was not bound to keep him locked up, or to set a guard over him.

Again, the sale, if actually made, would be void for the fraudulent concealment of the fact, that the slave intended to run away.

The evidence stated to be discovered since the trial, could not have varied the opinion of the jury ; but the application on that ground, is too late ; it ought to have been made at the next term after it was discovered.

SPENCER, J. delivered the opinion of the court. Notwithstanding several points were made on the argument, there is really but one ; was the property of the negro, at the time he ran away or subsequently, in the plaintiff or defendant ?

NEW-YORK,
May, 1808.

De Fonclear
v.
Shottenkirk.

We need not go to the civil law to learn when a chattel is sold, and fortunately for mankind, it is not a subject of very deep learning in our own law.

Independently of the statute, any words importing a bargain, whereby the owner of a chattel signifies his willingness and consent to sell, and whereby another person shall signify his willingness and consent to buy it, *in presenti*, for a specified price, would be a sale and transfer of the right to the chattel. To avoid frauds and perjuries, the statute requires either that the possession shall pass, or that something shall be given in earnest to bind the bargain, or that some note or memorandum, in writing, of the bargain be signed by the parties or their agents, where the price of the goods and merchandize shall be of the value or exceed 10*l*.

The negro was in the possession of the defendant, but whether as being sold to him, or put into his possession until he should signify his assent to buy, or return him, will depend on the facts in the case. It is not necessary to go minutely into the evidence; there is no positive testimony that the sale was completed. The plaintiff rests on circumstances from which to infer the fact; these the defendant has rebutted by circumstances and by positive proof of the acknowledgment of the plaintiff, that the negro was his when he ran away. I cannot see that the jury have decided against the weight of evidence, by finding for the defendant; and I am, therefore, unwilling to disturb the verdict.

It has been contended that the defendant, as bailee of the negro, is responsible for the running away, by permitting him to go a half a mile from his house in the evening. I cannot consider this position as law. It is unreasonable to suppose that a person would be inclined to buy a negro, or to have any concern with one for his own use, who was to be kept constantly under his eye. There is no negligence in suffering the slave to go out on an errand. The charge of the judge has been complained of, but in my judgment,

he submitted the cause on its true merits. The affidavit which has been submitted, to show the discovery of new evidence, does not entitle the plaintiff to a new trial, because, had it been before the jury, there is no reason to believe that the result would have been different.

We are, therefore, of opinion, that the plaintiff ought to take nothing by his motion.

Rule refused.