## NATIONS v. HAWKINS' ADM'RS.

1. The statute which declares that the action of trover shall survive for and against an executor or administrator, was intended to subject them to that form of action in their representative capacity, where a converson had taken place in the lifetime of the testator or intestate.

2. To support the action of trover, the plaintiff must at the time of the conversion have had a *property* in the chattel, either *general* or *special*, and the *actual possession* or the *right* to the *immediate possession;* consequently, if one who has a life estate in a personal chattel exchanges it with a third person as his absolute property, he who has the interest in remainder cannot maintain trover for the conversion; but a court of equity may perhaps protect his right to the future enjoyment of the thing.

3. Where a declaration contained two counts in trover, to which a third was added alledging a conversion of the chattel by selling or otherwise disposing of it, whereby the plaintiff is greatly aggrieved, injured and prejudiced in his reversionary estate and interest, to wit, to his damage, fifteen hundred dollars; and concludes that the defendants, though often requested, have hitherto failed, neglected and refused, and doth still fail, neglect and refuse to pay the said sum of money, or any part thereof, to

the plaintiffs damage, &c: *Held*, that the plaintiff could not recover on this count, as setting forth a cause of action *ex contractu;* but like those which preceded it, it must be considered as in form *ex delicto.*

Writ of Error to the Circuit Court of Marion.

THIS was an action of *trover* at the suit of the plaintiff in error. The declaration contains several counts. The first alledges the finding and conversion by the intestate of two slaves, the property of the plaintiff; the second alledges that the plaintiff hired to the intestate for the term of his life two slaves, which the latter sold absolutely out of his possession, thus converting them to his own use; the third alledges that the plaintiff was the proprietor of two slaves, which the intestate obtained possession of, under a contract in writing with the plaintiff, to hold them during his intestate's life; but intending to injure the plaintiff, he sold them absolutely out of his possession, thus converting them to his own use, so that plaintiff's reversionary interest has been prejudiced, &c. To this declaration the defendants pleaded—1. Not guilty; 2. The statute of limitations; and 3. No assets; and issues were joined upon all these pleas. On the trial, the plaintiff excepted to the ruling of the court. To support his declaration, the plaintiff read to the jury a deed, dated the 13th February, 1837, which affirmed that the intestate, in consideration of the natural love and affection which he had for the plaintiff and Richard Nations, and the further consideration of five dollars to him in hand paid, thereby gave, granted, bargained and sold to them "jointly, vesting equal rights in both, and to their heirs forever, four negro slaves, to wit, Viny, a female slave, about the age of eighteen; Thomas, a male slave about the same age; Ned, a male slave about the age of eight years; and Esquire, a male slave about the age of six years; reserving the right of the use of these slaves unto the said David Hawkins during his natural life," &c. This deed was acknowledged by the grantor on the day of its date, and deposited with the clerk of the county court of Blount, the county in which all the parties then resided, and on the next day was recorded.

・ In December, 1840, the grantor having previously removed

to Marion county, exchanged the slave Thomas, for another, and the slave received by him in exchange passed into the hands of the defendants as a part of their intestate's estate. After the intestate's removal to Marion in the fall of 1839, he exchanged the woman Viny for another slave, who after his death passed into the defendant's hands as a part of his estate. The intestate died in the fall of 1844.

Plaintiff also adduced a deed from Richard Nations to himself, by which, for a valuable consideration, he acquired all the right and title of Nations to the slaves described in the deed executed by the intestate in 1837—proved its execution, and then read the same to the jury. The value of the slaves was also proved.

The court was of opinion that the plaintiff could not recover in *trover* upon either count of the declaration; that as the exchange of the slaves by the intestate was not such a conversion as subjected him to an action at the plaintiff's suit, the defendants, as his personal representatives, were not liable upon that ground. A verdict was returned for the defendants, and judgment was thereupon rendered.

W. R. SMITH, for the plaintiff in error. Trover survives against executors and administrators, [Clay's Dig. 313; 3 Stew. Rep. 172; 8 Por. Rep. 183;] and where the deceased converted a chattel in his lifetime, his personal representatives are suable. The exchange by the intestate of the slaves as his absolute property was a conversion. [4 T. Rep. 260.] It was a breach of trust, and as such amounts to a conversion. [10 Johns. Rep. 175; 1 Cow. Rep. 334; 7 Por. Rep. 480.] If the right of action was not complete in the intestate's lifetime, because the plaintiff had not a right of possession, upon his death this right attached.

If the testimony discloses a cause of action which died with the person, the first two counts may be abandoned, and the third count, though beginning in *case*, may be considered a count upon an implied contract, as it assigns a breach against the defendants for failing, neglecting and refusing to pay a sum of money. It would have been good on demurrer as a count for money had and received. No objection was taken upon the ground of a misjoinder or other irregulari-

ties, and these were all cured by the pleading. [See 8 Por. Rep. 181.]

COGGIN, for the defendants, insisted that an action of *trover* cannot be maintained against an administrator unless his intestate had been guilty of a conversion. To maintain this action, the plaintiff must at the time of the conversion have had the actual possession, or the right to the immediate possession. [Chitty's Plead. 170.] In this case, the exchange of slaves before the intestate's death and during the continuance of his life, was not as it respects the plaintiff, a *conversion.* The defendants never had possession of the slaves, and consequently could not have converted them; there is therefore no ground upon which they could be charged. [Chitty's Plead. 176.] An action on the case would not lie upon the facts; but if they are chargeable in any form of proceeding, it is case.

COLLIER, C. J.—The deed of the intestate under which the plaintiff claims, reserves to the former during his life, the use of the slaves described therein. This *reservation of* course entitled the intestate to the possession, and continued in him such a right of property as was necessary for the protection of the usufruct. This being the case, it is clear, that although a court of equity would in a proper case have so exercised its powers as to secure to the donees under the deed, the enjoyment of their remainder, yet they could not during the donor's life have maintained an action which requires that the plaintiff should have not only a right of property, but a present right to the possession.

It is laid down in all the elementary works upon pleadings and actions, that trover would not lie at the common law against an executor or administrator upon the conversion of his testator or intestate; and our statute merely declares that it shall survive for and against them. [Clay's Dig. 313, § 2.] This enactment obviously presupposes that to subject a personal representative to the action of trover, his testator or intestate must have been thus suable. This is indicated by the employment of the word "survive," which in the connection it is found, means to outlive the decedent, or in

other words, that the action shall not as at common law die with the person; but as a remedy, shall retain its vitality either for or against the representatives of his estate, according as the right may be.

In order to support the action of trover, it is said the plaintiff must at the time of the conversion have had a *property* in the chattel, either *general* or *special;* he must also have had the *actual possession,* or the *right* to the *immediate possession.* [1 Chit. Plead. 150, and cases there cited.] It has therefore been held that where the furniture leased with a house was wrongfully taken in execution by a sheriff, the landlord could not maintain trover against the sheriff pending the lease, but should have declared specially in an action on the case. [7 T. Rep. 9; Willes' Rep. 56.] And as trover is founded on the right of property, either general or special, it is allowable for the defendant to show a right of property in a third person when the conversion took place. [2 Hayw. Rep. 139, 179 ; Taylor's Rep. (N. C.) 152.] In Andrews v. Shaw, 4 Dev. Rep. 70, it was decided that the plaintiff in trover must have both the right of property and of present possession, and when a person who had hired a slave for a year sold him, it was held the owner could not maintain trover during the term, although the defendant claimed the absolute title to the slave. [See also 2 Murp. R. 240, 302 ; No. Ca. T. R. 187.]

Starkie, in his treatise on Evidence, (3 vol. p. 1483,) says in general, possession of a chattel is *prima facie* evidence of property in the possessor ; but if the plaintiff has never had possession of the chattel, or if the contest be not with a mere stranger, but with one who will succeed in his proof of title, unless the plaintiff can prove a better, it is necessary for the latter to resort to strict evidence of title. But the right of possession must exist at the time of the conversion. [Ibid, 1491; 2 Saund. on Plead. and Ev. 873 ; 2 Esp. Rep. 465; 3 Camp. Rep. 417; 4 B. & C. Rep. 941; 7 D. & R. Rep. 896 ; R. & M. Rep. 99; 5 B. & A. Rep. 826 ; 1 Burr. Rep. 31; 1 Bla. R. 67; 1 M. & P. R. 556.]

It is clear, from what has been said, the plaintiff was not entitled to the possession of the slaves in question until after the death of the intestate ; consequently, the latter was not

suable in an action of trover, and his administrators we have seen are not answerable to the plaintiff in that form of action.

The third count in the declaration, after alledging a conversion of the slaves by selling or otherwise disposing of them to the intestate's use, avers that the plaintiff is thereby greatly aggrieved, injured and prejudiced in his reversionary estate and interest, to wit, to his damage fifteen hundred dollars; and concludes thus: "the said defendants, administrator, &c. as aforesaid, though often requested, have *hitherto* wholly failed, neglected and refused, and doth still fail, neglect and refuse to pay the said sum of money, or any part thereof, to the said plaintiff, to his damage," &c. The conclusion of this count cannot exert such an influence upon the supposed cause of action disclosed in it, and the manner in which it is stated, as wholly to change its character from *ex delicto* to *ex contractu.* Each count indicates by its frame that it belongs to the former category. It can hardly be possible that the plaintiff is remediless, yet we have sufficiently performed our duty by considering the points presented for our decision, and have only to add, that the judgment of the circuit court is affirmed.