## ARTHUR vs. GAYLE.

[ACTION FOR CONVERSION AND ILLEGAL SALE OF SLAVES.]

38 259<br>125 624

1. *When action lies between tenants in common of remainder in slaves.*—If one tenant in common of a remainder in slaves, during the existence of the particular estate, obtains possession of the slaves, and sells and conveys them as his absolute property, his co-tenant may maintain a special action on the case against him.

2. *When action lies by remainder-man against stranger.*—A sale of the absolute interest in slaves by a stranger, during the existence of the particular estate, is an injury for which an action lies in favor of the remainder-man.

3. *Admissions against interest.*—The declarations of a person who has possession of a slave, in disparagement of his own title, are competent evidence against him, or against a subsequent purchaser or sub-purchaser from him.

4. *Secondary evidence of deed.*—The existence and loss of a deed, executed in another State, having been proved by the admissions of the defendant's vendor; and also her declarations, to the effect that, after the loss of the original, she had procured a copy of the deed, and had it recorded here,—a transcript from the record, properly certified, is admissible evidence.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. NAT. COOK.

THIS action was brought by John C. Arthur, Adam B. Arthur, and Martha A. Evans, against Reese D. Gayle; and was commenced on the 8th February, 1858. The original complaint contained only a single count in trover, for the conversion of two slaves, Robert and Venus; but the following counts were afterwards added by amendment:

"2. The plaintiffs claim of the defendant the further sum of five thousand dollars damages, for that on the ——— day of ———, 18—, and before the death of Mrs. Mary H. C. Arthur, who departed this life about November, 1857, the plaintiffs, together with the defendant, were the owners, as tenants in common in remainder, of certain slaves, to-wit," Robert and Venus, " which remainder was expectant

upon the death of the said Mary H. C. Arthur; and the defendant, being wrongfully in possession of said slaves, and having full notice of plaintiffs' interest in the same as above set forth, but pretending and claiming to be the sole, absolute, and entire owner thereof, without the knowledge or consent of plaintiffs, but wrongfully intending to deprive them of all interest in said slaves, sold and delivered them to a person unknown to plaintiffs, professing, intending, and claiming, by said sale, to convey the entire interest and estate in said slaves; all of which took place before the death of the said Mary H. C. Arthur; by means whereof, the said slaves have been wholly lost to the plaintiffs.

"3. The plaintiffs claim of the defendant the further sum of five thousand dollars damages, for that on the ——— day of ———, 18—, and before the death of Mrs. Mary H. C. Arthur, who departed this life about November, 1857, the said plaintiffs, together with Reese D. Gayle, were the owners, as tenants in common in remainder, of certain slaves, to-wit," Robert and Venus, "which remainder was expectant upon the death of the said Mary H. C. Arthur; and said defendant, being in possession of said slaves, and having full knowledge of plaintiffs' interest therein as above set forth, but claiming, pretending, and professing to be the sole, entire, and absolute owner thereof, without the knowledge or consent of plaintiffs, but wrongfully intending to deprive them of all interest in said slaves, sold and delivered them to some person unknown to plaintiffs, professing, claiming, and intending by said sale, to convey the entire and absolute interest in said property; all which took place before the death of said Mary H. C. Arthur, and by reason thereof the said slaves have been wholly lost to plaintiffs.

"4. The plaintiffs claim of the defendant the further sum of five thousand dollars damages, for that on the ——— day of ———, 18—, and before the death of Mrs. Mary H. C. Arthur, who departed this life about November, 1857, the plaintiffs, together with one Mary M. English, were tenants in common in remainder of certain slaves, to-wit,"

Robert and Venus, "which remainder was expectant upon the death of the said Mary H. C. Arthur; and the said defendant, having wrongfully obtained the possession of the said slaves, and having full knowledge of plaintiffs' right thereto as above stated, but claiming and pretending to be the sole and absolute owner of said slaves, without the knowledge or consent of plaintiffs, and wrongfully intending to deprive them of all interest in said slaves, sold and delivered them to some person unknown to plaintiffs, professing, claiming, and intending to convey the absolute and entire estate in said slaves; all which took place before the death of the said Mary H. C. Arthur, and, by reason thereof, the said slaves have been wholly lost to the plaintiffs.

"5. The plaintiffs claim of the defendant the further sum of five thousand dollars damages, for that on the —— day of ——, 18—, and before the death of Mary H. C. Arthur, who departed this life about November, 1857, they were the owners, as tenants in common in remainder, of certain slaves, to-wit," Robert and Venus, "which remainder was expectant upon the death of the said Mary H. C. Arthur; and the defendant, having full knowledge of the plaintiffs' right to said slaves, but claiming to be the absolute owner thereof, wrongfully intending to deprive plaintiffs of all interest therein, sold and delivered them to a person unknown to plaintiffs, professing, claiming, and intending thereby, to convey the entire and absolute estate in said property; all of which took place before the death of the said Mary H. C. Arthur, and, by reason thereof, the said slaves have been wholly lost to plaintiffs."

The plaintiffs objected to the allowance of the amended complaint, and reserved an exception to the overruling of their objection; and they also demurred to the complaint as amended, and to each count thereof separately. The causes of demurrer assigned were—to the entire complaint, because of a misjoinder of counts; and to each of the amended counts, because it did not show that the plaintiffs had been damaged by the alleged wrongful acts of the de-

fendant, and because it did not show such a state of facts
as authorized the plaintiffs to maintain the action, and be-
cause there was a misjoinder of plaintiffs.   The court sus-
tained the demurrer to all the amended counts, and the plain-
tiffs excepted to its ruling.   The defendant then pleaded,
to the count in trover in the original complaint, "the gen-
eral issue, with leave to give in evidence any special matter
that might be pleaded in bar;" and issue was joined on
that plea.

The plaintiffs derived title to the slaves in controversy
under a deed from John Singleton, dated the 18th June,
1805, which was executed in South Carolina, and by which
the female ancestor of the slaves in controversy was con-
veyed to Mary H. C. Brisbane, (afterwards Mrs. Arthur,)
"for and during the term of her natural life, and, upon her
decease, to the heirs of her body lawfully begotten, who
may be living at the time of her death, share and share
alike ; and in case she should die without leaving such issue
living at the time of her death, to her executors, adminis-
trators, and assigns forever."   The defendant purchased
the slaves from one Darrington, who bought them from one
Diggs, who bought them from Mrs. Arthur; and he con-
veyed them, by a deed of marriage-settlement, in October,
1851, to a trustee, for the separate use of his wife
during her life, with remainder to their children by the
marriage.

To prove the deed from Singleton to Mrs. Arthur, the
plaintiffs took the deposition of Z. L. Bettis and Mrs. Mar-
tha B. Clary.   Bettis was the probate judge of Clarke
county, and he appended to his deposition a certified copy
of the deed, as recorded in the orphans' court of said coun-
ty on the 12th August, 1837 ; and it was admitted, that
the deed certified by him was the only deed on record in
said county from Singleton to Mrs. Arthur and her chil-
dren.   The testimony of Mrs. Clary in reference to the
deed was as follows:   "Mrs. Arthur came to Alabama,
from South Carolina, about January, 1834.   Witness knew
her in South Carolina, and after she came to Alabama, un-

til her death.    Does not know anything of an original deed, further than what she has heard Mrs. Arthur say of it.    Mrs. Arthur had what she said was a deed, made by John Singleton, conveying the slaves Venus," &c., "to her during her life-time, and at her death to her children who might then be living.    This deed, of which she heard Mrs. Arthur frequently speak in South Carolina, and afterwards in Alabama up to 1839, was put by witness, with other papers belonging to Mrs. Arthur, in a small writing-desk, which was put by witness in a larger box, in the latter part of 1833, in South Carolina, when packing up to re-move to Alabama.    The box was brought to Hamburg, South Carolina, and was left there, to be shipped to Clai-borne, Alabama, by way of Mobile.    The box was lost. Witness never afterwards saw the box, desk, or any of the papers.    She has frequently heard Mrs. Arthur, while she had possession of Venus, say that the deed was lost; heard her say, after they arrived in Alabama, that she would send to South Carolina for a copy of the deed; and heard her say afterwards, but before 1839, that she had procured a copy of the deed, and had it recorded in Clarke county, where her negroes then were."    The court suppressed, on defendant's motion, the copy of the deed appended to Bet-tis' deposition, and also the testimony of Mrs. Clary in reference to it; to which the plaintiffs reserved an excep-tion, as also to other rulings of the court on the evidence.

In consequence of the adverse rulings of the court on the pleadings and evidence, the plaintiffs were compelled to take a nonsuit; which they now move to set aside, and assign as error all the rulings of the court to which they reserved exceptions.

ALEX. & JOHN WHITE, for appellants.—1. Each count in the amended complaint shows an injury to the plaintiffs' interest in remainder, for which an action lies in their favor. 1 Chitty's Pleadings, 148–9, 152; 1 Bacon's Abr. 103; *Gordon v. Harper*, 7 Term, 9; *Broome v. King*, 10 Ala. 823; *Ramey v. Green*, 18 Ala. 771; *Allen v. Harper*,

26 Ala. 689; *Perminter v. Kelly*, 18 Ala. 718; *Wilson v. Reed*, 3 Johns. 178; *Welch v. Oliver*, 21 Pick. 561.

2. The declarations of Mrs. Arthur, made while she was in possession of the slaves, and in disparagement of her own title, were competent evidence against the defendant. *Walker v. Blassingame*, 17 Ala. 813; *Pearce v. Nix*, 24 Ala. 185; *Jennings v. Blocker*, 25 Ala. 415; *Cole v. Varner*, 31 Ala. 244; *Fralick v. Presley*, 29 Ala. 457.

3. The existence and loss of the deed from Singleton were sufficiently proved to let in secondary evidence of its contents.

BYRD & MORGAN, *contra.*—1. The sale of the slaves by the defendant was a lawful act, and passed only his own interest in them. Consequently, such sale cannot be the foundation of an action by the plaintiffs, unless fraud is shown, or some special injury to their rights.

2. The execution of the deed from Singleton was not proved, nor was there any legal proof of its existence and loss. Moreover, the certified copy was but the copy of a copy, and therefore not admissible.—17 Ala. 648; 18 Ala. 65, 338; 19 Ala. 245, 653; 20 Ala. 230, 485; 22 Ala. 416; 24 Ala. 209; 27 Ala. 281.

3. The other rulings of court on the evidence are covered by the following authorities: 26 Ala. 665; 19 Ala. 353; 20 Ala. 324; 22 Ala. 501; 24 Ala. 201; 27 Ala. 216; 28 Ala. 704, 110; 29 Ala. 244.

R. W. WALKER, J.—1. The question presented by the demurrers to the second and third counts of the complaint is, whether an action is maintainable by one tenant in common of a remainder in slaves, against his co-tenant, on the ground that the latter, during the existence of the particular estate, obtains possession of the slaves, and sells and conveys them as absolutely his own. If such a sale were made after, instead of before the termination of the particular estate, it is clear, both upon principle and authority, that it would be a conversion, for which the co-tenant could

maintain trover.—*Welsh v. Oliver*, 21 Pick. 559 ; *Wilson v. Reed*, 3 Johns. 174 ; *Perminter v. Kelly*, 18 Ala. 716 ; *Smyth v. Tankersley*, 20 Ala. 212 ; *Cowles v. Garrelt*, 30 Ala. 350. And if upon such sale money was received, the tort could be waived, and assumpsit for money had and received maintained.—*Smyth v. Tankersley, supra ; Cowles v. Garrett, supra.*

The fact that the sale was made during the existence of the particular estate, however material in determining the remedy to be pursued, and the *quantum* of damages recoverable, does not impair the right of action. The reason for sustaining the action, when the title and possession are vested, applies fully when the title is vested and the possession postponed. When the title and possession are vested, the action is maintainable, because each tenant in common sustains to his co-tenant a relation of trust and confidence, for any violation of which the law holds him liable.—*Van Horn v. Fonder*, 5 Johns. Ch. 406 ; *Flagg v. Wann*, 2 Sumner, 522. It is his duty to preserve the subject of the tenancy. If, having possession of it, he willfully mismanages it, or tortiously destroys it, he becomes liable to his co-tenants.—*Chesley v. Thompson*, 3 N. H. 1 ; *Anders v. Meredith*, 4 Dev. & Batt. 199 ; *Hyde v. Stone*, 7 Wend. 354; *Wilson v. Reed, supra ;* 1 Chitty's Pl. (12th Am. ed.) 155. A sale by a tenant in common, of the entire interest, is, so far as he is concerned, equivalent in its legal consequences to a tortious destruction of the subject of the tenancy. It is a violation of the trust and confidence springing from the relation he occupies. It is an attempt to invest himself with the entire interest, in that in which his co-tenants have an interest in common with him. Therefore, though, ordinarily, no action can be maintained *at law* by one tenant in common against another, in such a case the law permits the co-tenant to sue.

The same relation exists when the subject of the tenancy is a remainder, that exists when it is an interest in possession. There is the same community of interest and of duty. There is the same trust and confidence that the one

will do nothing prejudicial to the rights and interests of the other.  The violation of that duty and trust is as tortious when the subject of the tenancy is a future, as when it is a present interest; and every reason for maintaining the action applies as forcibly in the one case as the other. True, the same remedies cannot be pursued in each case. When the sale is made during the existence of the particular estate, it is probable that no action at law could be maintained, except a special action on the case; for the reason, that there is not a right of immediate possession. But, that an action on the case will lie, cannot, we think, be denied.—See *Cole v. Robinson*, 1 Iredell, 544; *Ramey v. Green*, 18 Ala. 776; *Nations v. Hawkins*, 11 Ala. 859.

It matters not that the sale would only operate to pass the interest of the tenant making it, not affecting the rights of his co-tenant.  The same argument could be made with equal force in the case of a sale of a present interest, or where a stranger sells the property of another.  In neither of these cases does the sale divest the title of the true owner; and yet, in each, it would be a good cause of action. There is, indeed, one reason for holding the tenant, making sale of a remainder, liable to his co-tenants, which does not exist in either of the cases just supposed.  Such a sale converts the estate in remainder, from an interest in possession, in legal contemplation, for many purposes, into a chose in action.—*Broome v. King*, 10 Ala. 819; *Price v. Tally*, 18 Ala. 21.  So far as the liability of the tenant making the sale is concerned, it is not material whether he has possession of the slaves rightfully or tortiously.  The ground of his liability is, that he has made sale of an absolute interest, in violation of his duty to his co-tenants, and has unlawfully assumed authority over and disposed of the property of another.

2. The fourth and fifth counts allege the sale to have been made by defendant, but do not aver that he was a co-tenant with the plaintiffs.  These counts present the case of a suit by a remainder-man, for an injury by a stranger to the estate in remainder.  Such suits have often been main-

Arthur v. Gayle.

tained; the test of their propriety being, whether the injury complained of was permanent in its character, affecting the right of the remainder-man; or temporary, affecting only the interest of the tenant of the particular estate. 1 Chitty's Pl. 62–3; *Beavers v. Trinsmer*, 1 Dutcher, 97; *Trusman v. Railroad Co.*, *ib.* 255; *Mumford v. Railway Co.*, 36 Eng. L. & Eq. 580; *Oxford v. Hallett*, 14 East, 489. A sale of the absolute interest is an injury affecting the rights of the remainder-man. It is designed, and often, operates, as a destruction of his interest. If the title of the plaintiffs had been a present, instead of a future interest, the sale would have rendered the person making it without authority liable to the true owner.—*Upchurch v. Norsworthy*, 15 Ala. 765. That it was a future interest, does not change the principle.—See Keyes on Chattels, §§ 532, 374; *Dean v. Whitaker*, 1 C. & P. 347; *Coffey v. Wilkinson*, 1 Metcalf, (Ky.) 101; *Cole v. Robinson, supra.*

3. We consider it unnecessary to notice in detail the numerous exceptions founded on the suppression of interrogatories, and the exclusion of evidence. One or two propositions will furnish a sufficient guide for the future conduct of the cause. The rule is, that a man's admissions against his own interest are admissible in evidence against him, and those claiming under him by a title arising after the making of such admissions. The title which the defendant set up was derived through Mrs. Arthur. Consequently, her declarations in disparagement of her own title, made while she was in possession, and before her sale to Diggs, were admissible against the defendant.—*Jennings v. Blocker*, 25 Ala. 415; *Fralick v. Presley*, 29 Ala. 462; *Gillespie v. Burleson*, 28 Ala. 552.; *Cole v. Varner*, 31 Ala. 244.

4. We think that the necessary predicate was laid for the introduction of secondary evidence of the contents of the deed of John Singleton. Its execution was shown by the admissions of Mrs. Arthur, under whom the defendant claimed; and its loss was established by her admissions and the other facts testified to by Mrs. Clary. The exist-

ence and loss of the deed being established, the examined copy from the records of the probate court of Clarke county should have been received as evidence of its contents. It was shown that, after the loss of the original, Mrs. Arthur stated that she had obtained from South Carolina a correct copy, and that she had had the same recorded in Clarke county. It was also admitted, that the copy offered in evidence was a copy of the only deed of the sort on record in that county. Upon this state of facts, the court erred in excluding from the jury the copy-deed appended to the deposition of Judge Bettis.—*Fralick v. Presley*, 29 Ala. 457, (462) ; 2 Phill. Ev. (C. & H.'s Notes, Edwards' ed. 1859,) p. 517, note 446 ; *ib.* p. 532, note 458; *Corbin v. Jackson*, 14 Wend. 619; *Allen v. Parish*, 3 Hammond, (Ohio,) 111, &c. ; *Winn v. Patterson*, 9 Peters, 663, 677.

Judgment reversed, and cause remanded.