2  269|
12ap410|
Hun.
2h 269|
53ad226|

THE PEOPLE ex rel. JOHN A. STEMMLER and JOHN
A. STEMMLER, Appellants and Respondents, v. JOSEPH
McGUIRE, Respondent and Appellant.

*Motion for new trial on newly discovered evidence — affidavits used on — what must
contain — how construed — Canvassers' certificate of election — may be impeached by
oral evidence.*

The affidavits used on a motion for a new trial, on the ground of newly discov-
ered evidence, must show the existence of other evidence, not available by the·
use of reasonable diligence on the trial already had, which, if then given,
would probably have produced a more favorable result to the applicant.  A
failure in either respect will not only justify, but require, a denial of the appli-
cation.

Where, on a motion for a new trial, an affidavit was produced, made by a person
who had given material evidence in the plaintiff's favor on the trial, which·
stated in substance that the witness had committed perjury in testifying as  he
did ; *held*, that the court properly declined to set aside the verdict on account
of it.

The affidavit of such a person is not entitled to so much weight as to justify the
conclusion that the evidence given by him, and which the jury may have·
regarded as credible and truthful, was corruptly and willfully false.

The canvassers' certificate of election is not conclusive, but may be annulled and·
overthrown by the oral evidence of witnesses.

In the examination of witnesses, parties have the right to show whatever may
fortify their statements, by indicating the improbability of mistake in making·
them.

Appeal by defendant from a judgment in favor of the plaintiff,
and from an order denying a motion for a new trial, made upon the
minutes of the court ; and by plaintiff from an order setting aside a
verdict, and directing a new trial on the ground of newly discovered

evidence, and from an order denying a stay of proceedings during the pending of the appeal.

*Nelson J. Waterbury* and *John K. Porter*, for the plaintiffs.

*A. J. Vanderpoel* and *William A. Beach*, for the defendant.

Daniels, J. :

The relator in the action claimed to have been regularly elected, in the year 1869, to the office of justice of the District Court, for the seventh judicial district of the city of New York, and that the defendant had unlawfully intruded himself into, and held that office. Upon an issue presenting both points for trial and determination, the plaintiffs recovered a verdict on which judgment was rendered, and from which one of the appeals now before this court was taken. During the pendency of that appeal, and also of the appeal from an order denying a motion for a new trial upon the minutes, a motion was made on behalf of the defendant at the Special Term, for a new trial on the ground of newly discovered evidence, which proved successful, and the verdict was set aside and a new trial ordered. From that order, the plaintiffs in due form appealed.

Upon the argument it was objected that this order was not appealable. But that is very evidently untenable, because the Code allows appeals to the General Term from orders granting or refusing new trials, in general terms, and without qualification.[*] The fact that they are in some sense discretionary, does not affect this right of review in the General Term, although it would be otherwise in the Court of Appeals.[†] The new trial was applied for, chiefly, upon three affidavits, besides that made by the defendant to supply the formal requisites of the motion, and which, for that reason, need not be particularly considered, as it seems to have been sufficient for that purpose. By one of the affidavits, a witness who gave material evidence in the plaintiff's favor, concerning the number of votes polled in one of the contested election districts, stated in substance that he had committed perjury in testifying as he did, but the court declined to set aside the verdict on the faith of it. In that respect the decision was clearly right, because the affidavit of such a person is not entitled to so much

[*] Code, § 349, sub. 2.  [†] Matter of Duff, 41 How., 350.

weight as to justify the conclusion that the evidence given by him, and which the jury may have regarded as credible and reliable, was corruptly and willfully false. The conclusion of the jury would rather warrant the presumption that his testimony was truthful, and his affidavit false. His excuse for his alleged perjury, is, that he was promised fifty dollars for committing the crime, and the inference seems to be indicated that he made the affidavit because that had not been paid to him. His evidence was not rendered the subject of very grave suspicion when it was given upon the trial, although it differed in a material respect from that given by him upon a preceding examination. That may have risen from infirmity of recollection. But whether it did or not, it was the appropriate province of the jury to decide. When his affidavit was made, it was quite evident that no latitude of indulgence would prove sufficient to justify the belief that he then was truthful. He may have been so upon the trial, but when his affidavit was made, he certainly was not so. And for that reason it could not be properly accepted as evidence that the statements made by him upon the trial were false. No injustice would be done to him, in concluding him by his last statement in a criminal prosecution, which, before this time, ought to have been instituted against him, but his oath is now of too unreliable a character to render it the foundation for disturbing the rights which others may have acquired on the strength of his testimony, when that may have been candidly and honestly given. More especially is that the case, as his evidence was substantially the same as that given by another witness, who, at the time of the occurrences testified to, was similarly employed, and whose truthfulness no reason appears for doubting.

The affidavits upon which the motion was allowed to prevail, were made by Williams and Brown. That of the former was the most explicit and important, and upon the statements made in it, the order is dependent for its support. For while Brown swore that he was present in the polling booth in which the votes, cast at the twenty-seventh election district of the nineteenth ward, were canvassed, and heard the result of the vote proclaimed, he does not state that the proclamation was made either at the close of, or near the time of, the canvass, or by any person who could be pre-

sumed to possess knowledge on that subject. And for that reason, what he may have heard said, does not appear to be entitled to the least consideration, as evidence of the fact referred to by him.

The affidavit of Williams is more particular in its statements, but still radically defective. He says that he heard the vote proclaimed by one of the canvassers in the polling booth where it was canvassed. But he does not state that it was at the conclusion of the canvass, or so near the time of it as, in any form, to have been connected with that act. Neither does he state that it was the canvasser, who publicly announced that the vote was sixty-three for Stemmler, ten for Levinger, and two hundred and eleven for McGuire. It is perfectly consistent with his statement, that the canvasser proclaimed one result, and that the public announcement, afterward mentioned, was made by some other person, giving entirely different numbers. It is true, it may, by a very liberal construction, be inferred that the deponent intended to be understood as swearing both the proclamation of the canvasser and the public announcement, to have been one and the same act. But he has not said so, and such inferences are not to be indulged in for the purpose of setting aside verdicts and judgments. The policy of the law, on the other hand, is to sustain them, unless the injustice of doing so is clearly made to appear. Parties are required to fully prepare their cases for trial, and if they fail to do so, the peace and good order of society require that they shall suffer the consequences of their own want of diligence. They cannot be relieved from an adverse result, unless the case made in support of the application is reasonably certain, credibly sustained, and fairly indicative of a different result upon another hearing ; and that cannot be held to be the case, unless the newly discovered evidence is shown to be properly admissible, and so far reliable as to render it worthy of belief. To render the announcement proper, as evidence, it should have been shown, if that could truthfully have been done, that it was made by the canvasser referred to, and so near the time of the canvass as to have indicated an official statement of the completion of that act. Then it would probably be admissible as part of the *res gestæ*. But that, the affidavit of the proposed witness entirely fails to do. He had a bet upon the number of the votes cast for each of the candidates, and it was not essential for its determination that his

information should have been derived in such a form as would render it evidence before a court of justice. What he required was, simply, knowledge of the fact, without looking so far as to ascertain whether its communication involved also the performance of an official duty. No hardship is required of a party, preparing *ex parte* affidavits in support of such an application, to require him to show, to a reasonable degree of certainty, at least, that what he relies upon as newly discovered evidence, would be received upon another trial, in case it should be ordered. That, the affidavits in this case have wholly failed to do. The inference is entirely consistent with the statements made, that the canvasser proclaimed the result after the board had ceased to act in the discharge of its duties, and that some other person publicly announced the vote which has been detailed. And that, certainly, is too loose to justify an order vacating a judgment and verdict, and directing another trial of the action.

Beyond that, the statements of Williams and Brown, even if they should be regarded as relating to what the canvasser said, are substantially discredited by the affidavits produced in opposition to the application. For McNally and Foster swear, that either one or both of the canvassers announced the vote to be precisely as it was given by the witnesses sworn upon the trial; and the truth of their statement is, to some extent, certainly, corroborated by the affidavits of Waterbury and Hamblin, and by the return of the vote given to the police department. It is not probable, therefore, that the evidence of Williams and Brown, even if it had been given upon the trial, would have changed the result. And for that, as well as the reason that it is not probable they could give legal evidence relating to the subject of the controversy, the verdict ought not to have been set aside. The rule upon this subject is quite well settled. And it requires the affidavits, used to support the application, to show the existence of other evidence, not available by the use of reasonable diligence on the trial already had, which, if then given, would probably have produced a more favorable result to the applicant. A failure in either respect will not only justify, but require a denial of the application.[*]

[*] De Fonclear v. Shottenkirk, 3 John., 170, 175 ; Bunn v. Hoyt, id., 255; Harrington v. Bigelow, 2 Denio, 109 ; Powell v. Jones, 42 Barb., 24.

In support of the defendant's appeal from the order denying the motion, made upon the minutes of the court to set aside the verdict, it is claimed that the canvassers' certificate should not be overthrown and annulled, simply by the oral evidence of other witnesses.    But this position cannot be sustained, because it is in direct conflict with the rule prescribed by the cases of *People* v. *Pease*,[*] and that of the *People* v. *Thatcher*.[†]    That such a result might be produced by oral evidence, was held in both those cases. And if it could not be, a degree of impunity would be secured to frauds in elections, which the law never has permitted in any different transactions.    Falsehood, deceit and fraud have been held to so far taint and impair the most solemn and formal instruments and records, as to justify the courts in annulling and declaring them void, even when the vice has been solely dependent on oral evidence for proof of its existence.[‡]    No reason exists for excluding cases of this description from the operation and effect of this rule.    It is even more important that those transactions, on which all the powers and functions of good government depend, should be free from fraud, misconduct and corruption, than it is to preserve the purity of the ordinary affairs of life and business.    If the franchise is to be fraudulently perverted and defeated, without the abuse being liable to correction by the ordinary means of evidence, it will be denied that security which constitutes the shield and protection of even trivial rights of property.    And that would certainly offer a reward for artifice, trickery and deceit in the management of elections, which would soon result in rendering them the subject of universal contempt.    It is difficult to imagine a device, which would more surely end in an entire disregard of the wishes of the electors, as they might be expressed by the ballot.    Iniquity of this nature is entitled to no such immunity. And it is due to the institutions of the country, that all frauds tending to diminish the efficiency of popular elections, should be discovered and redressed by the same means that are resorted to for the purpose of rendering them ineffectual in other cases.    Neither can any different measure of evidence be required, to establish fraud or official misconduct, in cases concerning proceedings under

[*] 27 N. Y., 45.    [†] 55 N. Y., 525.
[‡] Dobson v. Pearce, 2 Kern., 156; Warner v. Blakeman, 4 Keyes, 487.

the election laws, than has been found sufficient in cases involving other rights and interests. This may render official tenures somewhat uncertain, but it will not expose them to any unwarrantable danger, where the title of the officer is really well founded in fact. The real danger will be to fabricated and fraudulent official titles, and they are not so much entitled to support, as to require any new or uncommon rules to be invented for their protection. On the contrary the lasting, as well as the paramount, interests of every society, will be best promoted by extending all reasonable facilities to the discovery and suppression of frauds of this character.

The substantial evidence in the defendant's favor, was that supplied by the certificate and declaration of the canvassers, while the witnesses, whose evidence was given on behalf of the plaintiffs, showed quite satisfactorily that the vote was so much more favorable to the relator than the canvassers stated it, as in fact to result in his election to the office in contest. This evidence was derived from the poll-clerks, two in each of the contested districts; and even if that given by Fields should be assumed as unreliable, no well founded objection exists against adopting the statements of Hand as the truth, which was sufficient to justify the conclusion of the jury. If these witnesses testified to the truth, then the vote of the relator, in the two election districts concerning which the dispute existed, was sufficient to entitle him to the office, even though the canvassers, by their certificate and declaration, awarded it to the defendant. And whether it was true or not, was a question for the determination of the jury, which the court cannot interfere with by setting aside the verdict.

During the progress of the trial, quite a large number of exceptions were taken, mostly of an unimportant nature, which are relied upon in support of the appeals from both the order denying the motion for a new trial upon the minutes, and from the judgment. The first, in the order in which they have been presented, was taken to the proof of orders issued by the police superintendent. The witness simply proved that the papers shown him, were orders issued previous to the election held in December, 1869. That could do the defendant no harm, even if the orders themselves could not afterward be received as evidence. There certainly could be no objection to the relator proving them.

The evidence offered to show actual irregularities in voting, was entirely proper under the complaint, which charged that to be the fact, as a portion of the plaintiffs' case. Under these allegations, the court could not properly have deprived the plaintiff of an opportunity to make proof of the facts alleged. The .objection now taken, is, that the question was too general. But if it was, that should have been urged against it on the trial. It was there simply objected to, as leading, irrelevant and incompetent.

Upon the redirect examination of one of the poll-clerks, he was shown to have made an affidavit soon after the election, stating the vote given for civil justices in the district where he officiated. And, in that connection, he was asked and allowed to answer, whether there were any other matters then in dispute, relating to that election, except for police and civil justices. His answer was, that he believed there were some aldermen or assistant aldermen, but he was not applied to in regard to them. The object of this examination was simply to show that the witness' attention had been directed to the facts, concerning which he was examined, near the time when they occurred. And it was proper to allow it for the purpose of showing that they had been specially impressed upon his mind, so as to preclude the probability of his being mistaken. For that reason, his answer was relevant, material and competent. But even if it were not, no possible injury could have resulted from it to the defendant. In the examination of witnesses, parties have the right to show whatever may fortify their statements, by indicating the improbability of mistake in making them; and the circumstance proven, was one of that description. It showed the extent to which his attention had been directed to the fact in dispute, about the time of its occurrence, and when his recollection must have been entirely unobscured. If the election returns had been in existence, the plaintiffs would have been bound to produce them in the course of the trial. The law required them to be made out so that one of the returns could be filed with the alderman of the district, another with the clerk of the common council, and a third in the bureau of elections in the office of the clerk of the police force. Either one in existence, properly authenticated, would be evidence. But, as it turned out, neither seemed capable of being found, after the trial of the

case of *Murray* v. *Coulter*. For that reason, and as part of the process of showing that neither could be produced on the trial of this cause, it was very proper to show what had been done toward searching for them for that trial; the effect of the search made; and the final disappearance of the returns. That was substantially what the court allowed, and no doubt can be entertained as to the legality of the course pursued. It was the means by which it was shown that the returns could not be produced in this case, and the evidence given was pertinent to that object. It was not too extended for that purpose, but, even if it had been needlessly so, it was equally apparent, that, in that respect, it was also harmless. For the purpose of directing the attention of the witness to the subject, it was not improper to show that he had been interrogated, concerning the requirement made of him to produce the return upon the preceding trial. His answers show that he understood the purpose of the examination. For he simply stated, as he very properly could, that he remembered being interrogated in regard to two districts, which, he stated, he could not find; that they were not on file in his office. He stated that he could not speak from recollection as to the districts, but if he could not produce them then, he could not on the trial of this case. The great object was, to excuse the plaintiffs from the obligation to introduce the returns as evidence in their case; and all the inquiries made, seemed appropriate to that purpose. The search at the police headquarters was for the same general end, and the court very properly declined to strike out the answer the witness gave, that the returns were not found.

The poll-clerks were allowed to state the vote given for civil justices from recollection. Their answers were objected to, as secondary, irrelevant, immaterial and incompetent, and because they would contradict the returns made by the canvassers, by the mere recollection of witnesses. The returns themselves could not be found, and if the witnesses could answer as to the vote from recollection, there could not be any well founded objection to their doing so. No law confines the proof of the facts to either the returns or the tallies, and where a witness can give it from recollection, no reason exists for excluding the evidence. Neither witness was asked to do any more than give his actual recollection of

the vote, inserted in the returns which could not be found, and therefore were incapable of being produced, and the number of the votes given at the election, as he professed to be able to recollect it. The objection that the answers contradicted other documentary evidence, was not taken upon the trial, and for that reason cannot be considered here.

So much of the canvassers' return of the twenty-seventh district of the nineteenth ward, was offered in evidence by the plaintiffs, as related to aldermen, assistant aldermen and school trustees, and received under the defendant's objection that the statement of the canvassers did not present anything requiring explanation, and that it was irrelevant and incompetent, the plaintiffs having already offered the original statement in evidence. Upon its face, this purported to be the district canvassers' statement and return of votes, including those given for the justices. But that part of it, containing the justice's votes, had disappeared, and it was shown could not be found. And there could be no substantial objection to the paper being received in proof of that fact. It was relevant for that purpose, and that justified the ruling of the court under which it became a portion of the plaintiffs' case.

The memorandum made by the witness McLoughlin, was properly excluded, as it finally appeared from his examination, that it contained the statement only, of a man the witness did not know, the poll-clerk or the canvasser, given to a gentleman, of what the vote was. It was simply hearsay, and not admissable in evidence. The objection to it was entirely clear, and could not in its nature be obviated, and for that reason, objecting generally was sufficient. *

A police sergeant was examined, concerning a police blotter before him, and was asked whether he ever made any comparison by those returns at the foot of the page, which the defendant objected to, as irrelevant, immaterial and incompetent. The witness answered, " I do not think I did on that head." He was also asked, whether if he answered on the trial of the case of *Murray* v. *Coulter*, that he compared the votes ; it is correct. And that, he did not answer. But when the report of certain testimony was handed him, he then seems to have been able to state from recollection what he did do, and stated it. That was, that he went

* Merritt v. Seaman, 2 Seld., 168.

over the book with two or. three other gentlemen, in relation to the estimate of the different candidates. That he compared these returns with two returns brought by police officers from the polling district, and that the returns from the twenty-seventh district of the nineteenth ward, of the vote for civil justice, agreed as there recorded. He compared the entries, he said, to see if they corresponded with the returns. This evidence was not objected to, and, like much of the other matter objected to which seemed to result in proving nothing specially pertinent to the case, could not be made the foundation of any valid exception, particularly as all such statements were excluded from the consideration of the jury, by the charge given to them by the court.

Upon the re-examination of one witness, he was asked by the plaintiffs' counsel, whether he was not mistaken when he said that the vote for civil and police justices were on separate ballots. There could be no objection to the correction of the mistake, if one had been made. It was due to the witness, that he should have an opportunity afforded him for setting himself right, and the exception to the ruling allowing that to be done, has no shadow, even, of reason for its support.

The charge of the learned judge, wherein he stated that " it is for ·you [the jury] to determine from the evidence which has been produced before you, as to which of these persons is best entitled to the office, and who was really elected at that election," was not designed to leave the jury at liberty to decide the case on their judgment of the qualifications of the candidates, and they could not have so understood him. The last clause of the sentence left no ground for misunderstanding his meaning. It simply propounded to them the inquiry, as to " who was really elected at that election." It was not error for the court to refuse to charge, that " the presumption of law (under evidence given in this case of the result and declaration of the result of the canvass by the city canvassers) is, that the defendant is entitled to the office, and the relator is not entitled to the office." For the learned judge had, but a few moments before, stated to the jury that he charged them, " that McGuire, presenting himself before you with a certificate of election, is presumed to be justly entitled to his office ; that it is the duty of the plaintiff, by satisfactory evidence, to overcome that

presumption, and if he has not been able to satisfy you of the frauds which it is claimed have been committed, it is your duty to render a verdict for the defendant." After so fully and clearly charging the proposition requested, there was no propriety in asking for its repetition. It was for that reason very properly refused.

The request to charge, that the parol statements of witnesses present at the several polling places in the contested districts, as to the announcement of the number of votes cast, were not entitled to the same weight as the official declarations of the city canvassers, could not have been properly complied with, under the evidence given. Those were matters strictly within the province of the jury. And which might properly prove most convincing in their judgment, was a matter which the court could not decide, nor control them in deciding. Both were pertinent for them to consider, and the court did right in leaving them at liberty to determine for themselves, how much credit, under the circumstances, could be given to either, subject to the restriction that the plaintiffs were bound to overcome the returns, before a verdict could be rendered in their favor. Besides, it is not within the province of the court to decide precisely how much weight the jury shall give to any of the evidence, in arriving at their verdict.

The substance of the request to charge that there was no evidence of fraud or perjury having been perpetrated in any of the districts in the ward in question, and the jury have no right to presume any, has been already considered, under the objection presented that the verdict was against evidence. It was justly refused, for the reason that there was sufficient evidence given, tending to show fraud, to render the question, whether it existed or not, a very proper one for the decision of the jury. In fact it is not easy to see how the jury could well have avoided the conclusion expressed by their verdict.

As no other grounds have been taken in support of the appeals from the order denying a new trial on the minutes, and from the judgment recovered, it follows that they should each be affirmed, with costs. And for the reasons already given, the order setting aside the verdict and directing a new trial for newly discovered evidence, should be reversed, and the motion denied, with costs.

The other appeal, taken from the order denying a stay of all proceedings, as distinguished from the proceedings to retry the cause, it is not necessary now to consider. The disposition of the other appeals, renders that entirely unimportant. For that reason, it may as well be dismissed without costs, since the order applied for related to a simple matter of practice.

DAVIS, J., concurred.

Ordered accordingly.