# Bolling *v.* Munchus.

*Fraudulent Conveyance.*

1. *Only the assignee of a voluntary bankrupt can file a bill to set aside a fraudulent conveyance.*—When there is no lien 'on the property of a person who becomes a voluntary bankrupt, his assignee only has authority to insti-

[Bolling v. Munchus.]

tute suit for the purpose of annulling and setting aside conveyances made by the bankrupt with the intent to delay, hinder and defraud his creditors.

2. *The assignee is the representative both of the bankrupt and his creditors.* As the representative of the bankrupt the assignee succeeds to all the title and rights of property (except the exemptions), which the bankrupt owned. And as the representative of the creditors of the bankrupt he has all the rights of the creditors to pursue and subject to the payment of the bankrupt's debts, property which he had secreted, or disposed of in fraud of his creditors.

3. *After the discharge of a bankrupt, a creditor without a lien can not set aside a voluntary conveyance made by him.*—After the discharge of a bankrupt his creditor who had no lien upon his property can not file a bill for the purpose of setting aside a voluntary conveyance made by him before his bankruptcy.

APPEAL from the Chancery Court of Butler.
Heard before the Hon. HURIOSCO AUSTILL.
The facts are contained in the opinion.

WATTS & WATTS, for appellant.—1. The complainant was a judgment creditor of Munchus, and his lien was not impaired by the bankruptcy of his debtor.—*Crowe v. Reid*, 57 Ala. 281.

2. If the assignee in bankruptcy ever had any right to the land he failed to enforce it within two years of the bankruptcy, and thereby abandoned his right.—19 Ala. 454; Bankr. Law 1367, § 2.

3. The obligation of Munchus to his sureties existed in 1861, and this obligation to hold them harmless was older than his deed to trustees for the benefit of his daughter, and if the deed was voluntary, it was fraudulent to every existing creditor, and Bolling had the right to file a bill to set aside this fraudulent deed, although he had no judgment. Code, § 3446; 47 Ala. 200.

4. An exception to the statute of limitations must be specially pleaded.—21 Ala. 682. If by the fraudulent concealment of Munchus, his assignee did not discover the fraud until two years had elapsed, that was matter of plea for the defendants.—On demurrer the allegations must be taken as true so far as they are well pleaded.—Story Eq. Pl. § 452; 44 Ala. 611.

HERBERT & BUELL, for appellees.—1. If the complainant be entitled to recover at all, it would only be for the amount he paid and interest. This is nowhere averred in the bill, and therefore the bill lacks certainty in this respect.

2. The complainant is a creditor without a lien upon the lands described in the bill. The question arises whether or not a creditor without a lien can maintain a bill in a State

court to subject to his claim property fraudulently conveyed by a bankrupt previous to his bankruptcy. The right of the creditor to pursue the property of the debtor after bankruptcy, depends entirely upon his rights at the time of the bankruptcy.—16 Ala. 364; 8 Ala. 194; 8 Ala. 370; *Crowe v. Reid*, 57 Ala. 281.

3. It was the privilege of the complainant to have informed the assignee of the fraud alleged, and to have requested him to have brought suit. On his refusal, an order of the bankrupt court directing the suit to be brought could have been applied for.—9 Bankrupt Reg. 331. Or he could have filed his bill and made the assignee a party.—S. C. 2 Johns. 485. But under the allegations of this bill it can not be maintained.—Bump on Bank. (8 ed.) 520-1-2; 48 Miss. 101-3; B. Reg. 558. The case in 19 Ala. 404 was on a statute materially different from this.—29 Ala. 112; 12 Ala. 664; 10 Ala. 702; 1 Brick. Dig. 228, § 25.

4. The courts of the United States have exclusive jurisdiction of such matters.—3 Otto, 130; Revised Statutes, § 711.

STONE, J.—The present bill was filed in May, 1876, and seeks to subject lands, alleged to have been fraudulently disposed of by Joseph K. Munchus, to the payment of a judgment rendered against said Munchus in 1867, and transferred to Bolling and E. H. Pickens, who had paid the alleged debt as the sureties of said Munchus. The bill fails to aver that execution had been issued and kept alive, on said judgment, and makes a claim against Munchus of a debt without a lien. Pickens had died before this suit was brought—had no personal reprsentative, and no one representing his estate, was made a party to this suit.

If the averments of this bill be true—(and appellant can not controvert their truth)—Bolling and Pickens were equally sureties of Munchus, and, as between themselves, equally bound to pay the debt—did pay it, and took a transfer to themselves. The bill fails to aver the sum paid, and the proportion of the payment made by each of the sureties, and hence we feel bound to construe the bill as averring that Bolling and Pickens paid equally, and took a joint transfer of the judgment. This constituted Pickens, or his personal representative after his death, a necessary party to any suit which seeks to coerce the payment of the judgment.—*Ramsey v. Green*, 18 Ala. 771; *Colbert v. Daniel*, 32 Ala. 314. This error could have been amended in the court below, if the bill otherwise contains equity.—*Colbert v. Daniel, supra;*

1 Brick. Dig. 753, §§ 1692, 1694; *Frowner v. Johnson,* 20 Ala. 477.

The main inquiry in this cause is, the right of complainant to recover, even if his pleadings fully presented the case which the bill seeks to charge?

According to the averments of the bill, the debt of Munchus, for which Bolling and Pickens became his sureties, was contracted in 1861. In 1867 this debt was put in judgment against Munchus; Bolling and Pickens, in consideration of their liability, paid this debt, and in 1868, the judgment was transferred to them. Munchus became a voluntary bankrupt under the act of 1867, and received his discharge in 1871; five years before the present bill was filed. It is not shown whether or not this debt was ever proved against the bankrupt estate. It is averred that in 1873, subsequent to his discharge, Munchus promised to pay this debt, and actually made a partial payment thereon. The gravamen of the bill lies in the allegation that, in 1867, Munchus, who owned the land in controversy, procured the title to be vested in his daughter, Susan V. Munchus, without valuable consideration, and "for the purpose of hindering, delaying and defrauding his creditors." The bill further avers "that the said Joseph K. Munchus failed and neglected to return in his schedule of bankruptcy the said lands, and the assignee in bankruptcy of the said Joseph K. Munchus never took possession of said lands, and never made any disposition thereof, and this complainant avers on his belief and information that said Joseph K. Munchus fraudulently withheld said lands from his said schedule." There is no averment that the assignee was ever requested to assert his claim to said lands, or that he even knew of their existence. In fact, the bill, not only fails to make the assignee a party, but does not inform us who the assignee is.

We are aware that this court, in *Rugely & Harrison v. Robinson,* 19 Ala. 404, entertained a bill filed by creditors of a bankrupt, after his discharge, to subject to the payment of their claim, property of the bankrupt, which he had not surrendered in his schedule of assets, and which the assignee had neither sold nor attempted to recover. That case was distinguishable from this in the following particulars: First, the bill in that case was filed by judgment creditors, who had a lien, at least on the land involved, before the petition in bankruptcy was filed, and which lien the bankrupt law of 1841 did not impair. Under that statute it was declared "that nothing in this act contained shall be con-

strued to annul, destroy and impair . . any liens, mort-
gages, or other securities on property, real or personal, which
may be valid by the laws of the States respectively." In
the present case the complainant had no lien. Second, in
that case, the assignee was made a party defendant. In this
case he is not made a party. Third, under that statute, the
validity of a bankrupt's discharge could be impeached and
set aside in the State courts, for "fraud or wilful conceal-
ment by him of his property, or rights of property, . con-
trary to the provisions of" the act. Under the present
bankrupt law—Revised Statutes § 5120—the discharge can
be impeached and set aside, only in the court which granted
it, and on a proceeding instituted "within two years after
the date thereof." We may add that, in that case, our pre-
decessors ruled that inasmuch as Rugely & Harrison had
obtained a judgment, had execution returned no property
found, and then filed their bill to subject equitable assets to
its payment, they thus acquired a lien on the personal prop-
erty of the bankrupt, although their bill was filed after his
discharge. It is not our purpose in the present case, to
express our approbation of, or dissent from that decision.
The bankrupt act of 1841, under which that ruling was
made, has long been repealed ; and the present bankrupt
law is so different from that in many important particulars,
that we deem it unnecessary to discuss the principles of that
decision.

Under the bankrupt act of 1867—Revised Statutes, §
5044—the deed of the register to the assignee conveyed to,
and vested in the latter, "all the estate real and personal of
the bankrupt." Under this clause, "The assignee can not
take anything more than the bankrupt himself had, in any
case, except in the case of a fraudulent conveyance by a bank-
rupt." In other words, the assignee succeeds to all the title
and rights of property, (less the exemptions,) which the
bankrupt held. This, as the representative of the bankrupt.
And he succeeds to all the rights of the creditors of the bank-
rupt, to pursue and subject to the payment of the bankrupt's
debts, property which he has secreted, or disposed of in fraud
of his creditors. This, as the representative of the creditors.
Hence, the assignment when made, leaves the bankrupt with-
out property, or rights of property, save the exemptions which
the statute secures to him.—Revised Statutes, § 5046. But
it does not impair or dissolve liens on the bankrupt's prop-
erty, lawfully acquired, save as the statute declares it shall
have such effect. Only the residuum of title or interest held

by the bankrupt, in property thus legally encumbered, passes to the assignee. "There is no distinction in the bankrupt law between different kinds of liens. Its provisions apply equally to all liens, of whatever kind, character, or description. The first point to be ascertained is whether there is a valid lien according to the laws of the State where the property is situated. If there is a valid lien under those laws, there can be no claim upon the property under the bankrupt law. If there is a valid lien under those laws, it follows the property into the bankruptcy, and will be there recognized, protected and enforced."—Bump on Bankruptcy, 9th ed. 173; Revised Statutes, § 5075, and notes by Bump. It was under this principle that we held in *Crowe v. Reid*, 57 Ala. 281, that the lien of the creditor was preserved, notwithstanding the bankruptcy of his debtor; and that he could assert that lien in the State court. In this we but affirmed, what the bankrupt law declares, that that portion of a bankrupt's property which is covered by a valid lien, to the extent of such lien, does not pass by the bankruptcy or assignment, and never vests in the assignee. But all other property-rights of the bankrupt do so vest.—Revised Statutes, § 5044, 5046.

The present case may be briefly stated as follows: The title to the land in controversy, so far as the same was owned by Munchus, or subject to his debts, being under no legal lien, vested in his assignee, who alone had the title and right to reduce it to possession, for the benefit of all creditors proving their demands. No steps have ever been taken to divest that right and title out of the assignee. If he has, by waiting more than two years, forfeited, or lost his right to sue and recover this property, the result is, not to revest the title in Munchus. He had long parted with it by a conveyance, valid against him. Not to reinvest in the creditors of Munchus, the right, in their own names, to pursue and subject this property to the payment of their demands. Being without a lien, they could only assert their right through the assignee, who, for wise purposes of equal distribution, was clothed with the sole right and power to sue. And the creditors have no right to complain of this; for, if in due time they had requested the assignee to take steps to bring this property under his administration, he, no doubt, would have done so; and thus the proceeds would have been equitably distributed among all the creditors. If thus notified and requested to institute proceedings to possess himself of such property, some decisions hold that the creditor may then proceed in his own name and right, making the assignee a party defendant.—See

[Wilson v. Strobach.]

Bump on Bankruptcy, 9th ed. 526 *et seq.; in re Winne*, 4 B. R. 23; *Alenbrook v. Cates*, 5 Tenn. 271; see also *Doe v. Childress*, 21 Wall. 642; *Eyster v. Gaff*, 1 Otto, 521; *Gibson v. Green*, 45 Miss. 209.

We agree with the chancellor that the present bill contains no equity.

Decree affirmed.