# McCoy v. Gentry.

*Bill in Equity to have Conveyance of Land, absolute on its Face, declared a Mortgage, and to redeem.*

| 73  | 105 |
| 128 | 201 |
| 73  | 105 |
| 120 | 538 |
| 129 | 539 |

1. *Statute of limitations; when runs in favor of mortgagee against mortgagor.*—The statute of limitations runs in favor of a mortgagee in possession against the mortgagor out of possession.

2. *Same; when a bar to a bill in equity to have absolute conveyance of land decreed a mortgage, and to redeem.*—The statute of limitations is a complete defense to a bill in equity filed by a grantor in a conveyance of land, absolute on its face, to have the conveyance decreed a mortgage, and to redeem, when, at the time the bill was filed, the grantee and those claiming under him had held independent possession of the conveyed premises for more than twelve years, during which time neither word nor act is alleged or proved, recognizing the grantor's claim to the land.

3. *Same; what will not operate to remove the bar.*—The bar of the statute of limitations in such case can not be avoided by proof that, at the time of the execution of the conveyance, there was a parol agreement between the grantor and grantee, that the latter should hold the land in trust for the benefit of the former, when the proof offered to establish the trust proves also that the real design of the parties to the conveyance, in its execution, was to hinder and defraud the grantor's creditors.

APPEAL from Lee Chancery Court.

Heard before Hon. N. S. GRAHAM.

The bill in this cause was filed on 18th September, 1879, by Daniel H. Gentry against Leander F. McCoy and John F. Lewis, to have a conveyance of land, absolute on its face, and reciting a moneyed consideration, executed, as alleged in the bill, on 1~th May, 1866, by the complainant to the defendant McCoy and James F. Waddell, attorneys-at-law, declared a mortgage, executed to secure a fee of $500, which the complainant had agreed to pay said attorneys in the event of their successful defense of a bill in equity, which had been filed against him in the Chancery Court of Russell county by one Rogers, seeking, as purchaser, a specific performance of a contract for the purchase of the land conveyed by the conveyance to McCoy and Waddell; and for redemption; and also to have set aside and canceled a deed from complainant to Rogers, and a deed from Rogers to McCoy, subsequently executed, and conveying the same land, as having been obtained by fraud and undue influence, practiced upon the complainant by the defendant McCoy. Lewis was made a party defendant as a subsequent purchaser from McCoy. The averments of the bill, and the facts disclosed by the evidence, necessary to an under-

standing of the points decided, are stated in the opinion. The defendants separately demurred to the bill, setting up, among other things, the statute of limitations of ten years. The demurrer was overruled; and afterwards, on a submission of the cause on pleadings and proof, a decree was entered, granting relief to the complainant.

The decree overruling the demurrers, and the decree granting relief to the complainant, are here assigned as error.

G. D. & G. W. HOOPER, for appellants.

H. C. LINDSEY, *contra*.

STONE, J.—Taking the averments of the bill and the testimony of the complainant, Gentry, as true, and they show the following state of facts: About December, 1866, Gentry moved off the premises in controversy, and McCoy moved in and took possession. He continued in possession, exercising acts of ownership and control until 1872 or 73, when he sold to Lewis, and the latter entered and occupied. He remained in quiet and undisturbed possesson under a contract of purchase from McCoy, until this bill was filed in September, 1879. During all this time there is neither averment nor proof that either McCoy or Lewis did any act, or uttered a word in recognition of any right or interest Gentry may have or assert in the land. So far as the averments or proof go, McCoy and Lewis have all the while held in independent right; and the case made for complainant seeks, with persistent effort, to show that, from the very commencement, McCoy has intended to appropriate the lands to himself, and to deprive Gentry of them. Nor is there a word, either of averment or proof, that Gentry was at any time ignorant of McCoy's purpose. True, Gentry charges in the bill, but does not testify, that about the time McCoy took possession—December, 1866—he, McCoy, said to Gentry, "I will save your land for you." There is no proof of this; but if there were, the remark is very ambiguous. The suit with Rogers was then undetermined, and the remark may have had reference to that undetermined suit. The reversal of that decree was necessarily implied in the remark, if made, for, as the case then stood, it was decreed to be the property of Rogers, and neither Gentry nor McCoy could claim it. A remark, so indeterminate in meaning, even if proved, would not be a safe predicate for a decree determining the title to lands. So, without reference to the writings passed, the undisputed facts are, that, for more than twelve continuous years, first McCoy, and then Lewis, holding under him, have had the un-

broken, undisturbed possession of the land, exercising all the while customary acts of ownership and dominion.

The bill in this case has another phase, which, we suppose, is an attempt to break the force of the stubborn facts stated above. It charges that the transaction it seeks to overhaul, had its origin in a retainer of Waddell and McCoy, attorneys-at-law, by Gentry, to defend him against the chancery suit of Rogers, which is reported in 40 Ala, 442. The averments are, that Gentry promised the attorneys a fee of five hundred dollars, if they succeeded in gaining for him said chancery suit of Rogers. It then charges that to secure the payment of that fee, he conveyed the lands in controversy by absolute deed to said attorneys, on a recited consideration of two thousand dollars paid; that the deed was intended to operate as a mortgage, and that the only consideration was said contingent fee of five hundred dollars, no money being paid or promised by McCoy and Waddell. The retainer and the execution of this deed were of date May 18, 1866. No explanation or reason is given why this conveyance was made by absolute deed, and not by mortgage. It may as well be stated here, that the bill makes no charge of improper conduct against Waddell. Its averments are that he recognized the conveyance as a mortgage security, and sold and conveyed his interest to McCoy in 1867. The bill then charges that the deed from Gentry to Waddell and McCoy was altered by McCoy, or through his procurement, by erasing the figure 1 before the figure 8, so as to make it appear it was executed on the 8th of May, instead of the 18th; and that this was done after delivery, without the knowledge and consent of Gentry. A motive, on the part of McCoy, for this alteration is attempted to be shown, in this: One Sills had recovered judgments against Gentry on the 16th day of May, 1866, amounting to some seventeen hundred dollars. The argument is, that this alteration was made to give to the deed the appearance of having been executed before the Sills judgments were recovered. It was at that time a debated question with the profession, whether judgments operated as liens on lands.

The case of *Gentry v. Rogers* was decided in this court in favor of Gentry in the early part of the year 1867. By that decision it was determined that Rogers was not entitled to specific performance, and his bill was dismissed, as wanting in equity. It was also announced that Rogers was remitted to his remedy at law, if he had any. Not having paid any part of the purchase-money, he was, of course, without any remedy by suit on the bond. The bill in this case charges as follows: "Some time in the year 1867, the said L. F. McCoy, still being of counsel for your orator in said Supreme Court, in anticipation of an early reversal of the same therein, or knowing that

[McCoy v. Gentry.]

the same had just been reversed, and the bill of said Rogers finally dismissed, went to said Rogers, against whom he had been employed to protect your orator's interest, and obtained from him a written agreement, that he, the said Rogers, would convey to him, the said McCoy, all the right and interest he, the said Rogers, possessed in said land, and turn over your orator's bond thereto executed in December, 1859, in consideration that said McCoy would pay the cost of said cause of Rogers against your orator." This averment suggests the following reflection : It first leaves it in doubt whether the suit of *Gentry v. Rogers* had been decided by this court, and then avers that Rogers, who had obtained a decree in the court below, securing to him a valuable tract of land, sold and surrendered all interest he had in said land to the attorney of his adversary, for the paltry consideration that the latter would pay the cost of the suit.

The bill proceeds : "About a week after the execution of said written agreement between said McCoy and Rogers, and after the reversal of said cause in said Supreme Court, and the dismissal thereby of Rogers' bill for specific performance, but which facts, as well as the design of said McCoy, and his said agreement with Rogers, were all unknown to your orator, said McCoy directed, and had your orator to make a deed to said land to said Anthony F. Rogers." This deed recited a consideration of thirty-two hundred dollars paid, while the bill avers nothing was paid. The bill fails to aver any representation made, or inducement offered by McCoy to Gentry, as a motive for executing this deed. Is this not a very strange account of a real transaction ?· Gentry was contesting, severely contesting Rogers' right to recover the land, and, to this end, employed counsel to represent him, promising them a liberal fee for their services, if successful. He had received nothing of the purchase-money promised by Rogers, and did not know the suit had been decided in his favor. Yet, without any consideration paid or promised, he conveyed this very land to the very man whose claim he was thus contesting, without any knowledge or information that it was to be reconveyed either to him, or to his counsel, to whom he, Gentry, had previously conveyed the title. And the only explanation he offers is, that McCoy, his counsel, "directed and had" him to do so. This averment makes a heavy draft on credulity. The bill then avers that a few days afterwards—in the spring of 1867— Rogers conveyed the land to McCoy.

There are other features of this bill equally damaging to Gentry. The administrator of Sills had filed a bill against Gentry and McCoy, charging fraud in the conveyances mentioned above, and charging against McCoy the fraudulent

[McCoy v. Gentry.]

alteration of the deed, averred in this bill. That bill was answered by Gentry under oath. He denied the fraud charged, and answered that the conveyance was a real sale, vesting a fee simple title in Waddell and McCoy, and that they had paid him for the land. In that sworn answer is the following paragraph, which sheds an additional unfavorable light on the claim now asserted by Gentry: "Defendant [Gentry] admits that he filed his petition in the U. S. court, and was adjudged a bankrupt in 1867 or 1868, and that John L. Pennington is his assignee," etc. Now, whether Gentry's deed to Waddell and McCoy was an absolute conveyance, or a mortgage, he seems to have used it in the former capacity, in defending against Sills' administrator, and there is room, at least, for inference, that the bankrupt assignee was kept at bay by force of its terms. There is no legal proof of the bankruptcy to be found in this record. If there were, that itself would be sufficient to defeat Gentry's present suit.—*Bolling v. Munchus,* 59 Ala. 482.

The averment in the present bill, relating to that sworn answer, is, that McCoy "had prepared for your orator an answer in said cause, under oath, affirming that said conveyance of land to Waddell and McCoy was a conveyance in *fee simple,* and without any condition; that the transfer of said personal property was for a sufficient money consideration paid by said L. F. McCoy to your orator. But your orator states that he was ignorant in fact of the statements made in said answer, and that the same was made by him only under the influence and by the direction of his said solicitor, McCoy."

We have stated all this bill contains in explanation of that sworn answer, or of its strange averments. They certainly present the complainant in no favorable light. Three solemn transactions, each one, unexplained, furnishing the strongest evidence that Gentry made an absolute disposition of the lands, and little or no excuse offered why either was done. And, as to the sworn answer, the attempted excuse of "ignorance" of the contents is certainly very unsatisfactory. An oath should be the most sacred of assertions; and yet, without knowing its contents, this complainant avers and testifies he made oath to the answer in chancery, simply because his counsel told him it was all right, and told him to make the affidavit. There is but one plausible explanation of this conduct of complainant, and that is, that he was seeking thereby to place his property beyond the reach of his creditors. And it seems he succeeded, alike against Sills' administrator, and, *perchance,* the bankrupt court. If this was his purpose, chancery will grant him no relief.—*King v. King,* 61 Ala. 479.

[McCoy v. Gentry.]

While we have felt it our duty to comment thus unfavorably on the conduct of the complainant, as shown in his bill and in his testimony, there is much in the conduct of McCoy, as shown in this record, which needed explanation, and which, if untrue, he could, at least, have denied, and, to some extent, have disproved by other testimony. He has neither testified, nor offered evidence in his own exculpation. The general aspect of the case is, that Gentry and McCoy had a common purpose to hinder and defraud the creditors of the former, and that the latter determines to hold the stake acquired. No court will grant active relief to either party in such unholy alliance. So, without announcing absolutely that the principle last announced is applicable to the facts of this case, we are within safe bounds when we affirm that the effort to take this case without the influence of the statute of limitations, if successful, would lead to the conclusion that the real design of the conveyance was to defraud Gentry's creditors. The proof offered to establish the trust, proves the fraud as well; and furnishes no excuse why the statute of limitations should not be held a bar.

This case, then, must be determined on the demurrer, setting up the statute of limitations of ten years. As we have shown above, McCoy, and Lewis claiming under him, had held independent possession of the premises for more than twelve years when this suit was brought. During all that time, neither word nor act is alleged, or proven, recognizing, in the least, Gentry's claim to the land. This is a complete bar to his recovery, no matter how clear his original title may have been. The gravamen of the bill is, that Gentry is a mortgagor, seeking to redeem. The statute of limitations runs in favor of a mortgagee in possession, against the mortgagor out of possession.—*Byrd v. McDaniel*, 33 Ala. 18; *Coyle v. Wilkins*, 57 Ala. 108.

The decree of the chancellor is reversed, and a decree here rendered, dismissing the complainant's bill. Let the costs of the original suit, and the costs of appeal, both in the court below and in this court, be paid by the appellee.